Craves, J.:
Defendant in error took a policy from the company August 11th, 1869, on a harn and other property situated on a farm in St. Joseph county, and on the 24th of July, 1874, the barn was destroyed by fire. An action was brought for the loss and defendant in error recovered. The company asks for a reversal. They object, that in the application defendant in error represented that he was owner of the farm and barn, but in fact was not.
There is no dispute concerning the form of his representation. He was asked: “Are you the owner of the buildings to be insured, and of the farm upon which they are situated?” To which he replied, “Tes.” The question arises upon the correctness of his answer. It was ruled below, and his counsel here contends, that the facts showed that he was the equitable owner, and if so, that was sufficient. Counsel for the company claims that the facts were not sufficient to make out an equitable title.
It appears that when the application was made, and *until May 22d, 1871, the legal title stood in the name of Mrs. Fogelman, wife of defendant in error, and that she deeded to him at this last named date; that some time prior to her marriage with him, which occurred March 26, 1868, her father bought this farm, paying two thousand dollars in cash, and caused it to be conveyed to her as her property upon her giving back to him a mortgage upon it to secure the balance of the purchase price, being four thousand dollars; that the place was worth some six thousand dollars; that shortly before her marriage a verbal agreement was entered into between herself, her intended husband, Mr. Fogelman, and her *457 father, that if Mr. Fogelman would move upon the place, cultivate and improve it, care for and support the family, and pay off the incumbrances, Mrs. Fogelman, when required by her husband, the defendant in error, would convey to him the legal title; that in pursuance of this arrangement, defendant in error in good faith actually moved upon the premises, and carried out and performed the terms thus verbally expressed; that he lived on the premises with his family, worked the lands, paid the taxes, kept up the fences, made improvements and conducted the cultivation as owner; that he used the proceeds as his own, applying what was necessary for the support of his family; that he took with him a span'of horses, four head of eattle, and other personal property, and all of which was now on the farm; that prior to the application for insurance he had actually paid enough on the four thousand dollar mortgage to reduce it to two thousand two hundred dollars; that the money so paid was raised in part and mostly from crops taken off of the farm, but that the rest was obtained from crops raised by him on other lands; that no account was kept of these matters between himself and wife; that after the policy was obtained and prior to the loss he had paid some fifteen hundred dollars or eighteen hundred dollars more on the mortgage from the proceeds of crops produced on the *farm; that the conveyance from his wife to him was delayed because money was scarce, and because the parties at one time supposed she could not convey directly to him.
It is urged for plaintiff in error that there was here no contract on the part of defendant in error; that he was left to do just as he pleased, either to go on or abstain. The arrangement should be judged of in the light of all the circumstances. There was of course nothing precise or formal in it.
The father had just bought for his daughter’s benefit a farm worth six thousand dollars, and was giving her two thousand of the purchase price, but wished the balance of four thousand dollars to be cleared up without his aid. He was acting in contemplation of the immediate marriage of his daughter with defendant in error, and the two last were acting upon his wishes, and on their own ideas of prudence.
*458 The three were looking at the farm in question as the future home of the two. The arrangement was a domestic arrangement, an affair in the family. The daughter and son-in-law were to be settled, and the father was aiding. Through the father the daughter held the legal title to a farm worth six thousand dollars, but subject to a mortgage of four thousand dollars. It was thought best that the son-in-law should carry on the place and pay up this mortgage and have the legal title. We are not confined to mere words. We must look at the acts of the parties. They are expressive. The defendant in error at once repaired with his wife to the farm. He carried his personal property there. He there labored. He went to paying up the mortgage. He paid the taxes. He made improvements and repairs and acted precisely as though he was purchaser. Unless he was carrying out the arrangement as one accepted by'and obligatory upon him his course is not explained.
His wife considered that he had fully acceeded to the verbal understanding, and was performing his *share. The whole circumstances, in fine, prove that he under took to pay up the mortgage, and on his part carry out the verbal understanding.
When he applied for insurance he had made large expenditure and could not retire without great loss, and at the same time what remained to be done was small in comparison with the value of the farm.
That he was then owner by equitable title seems hardly open to discussion. — Twiss v. George, 33 Mich., 253. And it is not claimed that he must have been vested with the legal title also, in order to support his statement in the application that he was owner.
He was owner of the barn by equitable title, and the risk of its destruction was his risk. No body was under obligation to rebuild for him, and he could protect himself only by insurance.
Judgment affirmed, with costs.
The other justices concurred.