HARRY C. HALL v. THE NIAGARA FIRE INSURANCE COMPANY.

*Fire insurance—Insurable interest—Conditions of policy—Consent to assignment—Estoppel.*

1. A vendee in a land contract has an insurable interest in a building he is erecting on the land.

2. The condition in the policy sued upon, that it should become void, "unless consent in writing is indorsed by the company hereon, if the assured is not the sole and unconditional owner

of the property," is held to relate to changes arising after the execution and acceptance of the policy; citing *Hoose v. Insurance Co.*, 84 Mich. 309.

3. When an insurance company consents, without reservation, to the assignment of a policy, representing upon its face an unearned value, to a purchaser of the insured property, who, in good faith, pays value for such transfer, the company is estopped from setting up mental reservations or prior breaches, which were unknown to either party, in avoidance of liability on the policy.

4. The provision in defendant's policy, that it should become void "if the title or possession be now or hereafter become involved in litigation," is held to relate to a litigation over the title or possession of the assured, and not to a proceeding to oust a tenant from the insured property.

5. The following propositions are summarized from the opinion of Mr. Justice McGRATH:

   *a*—An applicant for insurance is not required to show the exact condition of his title, unless requested so to do; citing *Castner v. Insurance Co.*, 46 Mich. 15; *Guest v. Insurance Co.*, 66 Id. 98.

   *b*—The failure of an applicant for insurance to mention incumbrances, if not inquired about, the application being oral, and no deceit being practiced, is immaterial; citing *O'Brien v. Insurance Co.*, 52 Mich. 131; *Tiefenthal v. Insurance Co.*, 53 Id. 306.

   *c*—An equitable ownership will support a recital of ownership; citing *Insurance Co. v. Fogelman*, 35 Mich. 481; *Guest v. Insurance Co.*, 66 Id. 98.

Error to Wayne. (Hosmer, J.) Argued June 10, 1892. Decided October 4, 1892.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Keena & Lightner,* for appellant.

*Hanchett, Stark & Hanchett,* for defendant, contended:

1. The sale by Hough to Stevens, and placing him in possession under the contract, not having been consented to by the company, rendered the policy void; citing *Insurance Co. v. Riker*, 10 Mich. 279; *Savage v. Insurance Co.*, 52 N. Y. 502; *Davidson v. Insurance Co.*, 71 Iowa, 532; *Insurance Co. v. Archibold,*

16 Ins. Law J. 153; *Cottingham v. Insurance Co.* (Ky.), 14 S. W. Rep. 417; *Insurance Co. v. Dunham*, 117 Penn. St. 460; *Elliott v. Insurance Co.*, Id. 548; and the policy, having become void, cannot be revived by any action of waiver or estoppel, unless done with a full knowledge of the facts; citing *Insurance Co. v. Fay*, 22 Mich. 468; *Insurance Co. v. Watson*, 23 Id. 486; *Insurance Co. v. Hurd*, 37 Id. 13; *Emery v. Insurance Co.*, 51 Id. 471.

2. An assignment and consent is not regarded as yielding any rights of the company. The same defense can be made as if the action were brought by the assignor; citing *Bergson v. Insurance Co.*, 38 Cal. 545; *Eastman v. Insurance Co.*, 45 Me. 307, 314; *Merrill v. Insurance Co.*, 48 Id. 285; *Insurance Co. v. Winslow*, 8 Gray, 38; *McCluskey v. Insurance Co.*, 126 Mass. 308; *Ellis v. Insurance Co.*, 68 Iowa, 578; *Insurance Co. v. Mitchell*, 48 Penn. St. 373; *Mitchell v. Insurance Co.*, 51 Id. 410; *Insurance Co. v. Garland*, 108 Ill. 220; *Elliott v. Insurance Co.*, 117 Penn. St. 548.

McGRATH, J.   This is an action upon a policy of insurance dated October 13, 1888, and running for three years, issued to J. C. Hough " on his two-story frame dwelling, * * * against all such immediate loss or damage sustained by the assured as may occur by fire to the property above specified, but not exceeding the interest of the assured in the property." By the terms of the policy, the assured by its acceptance—

"Warrants that any application, survey, plan, statement, or description, connected with procuring this insurance, or contained in or referred to in this policy, is true, and shall be a part of this policy; that the assured has not overvalued the property herein described, nor omitted to state to this company any information material to the risk."

The policy also provided that—

" This policy shall become void, unless consent in writing is indorsed by the company hereon, in each of the following instances, viz.: If the assured is not the sole and unconditional owner of the property; or if any building intended to be insured stand on ground not owned in fee-simple by the assured; or if the interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortga-

gee, lessee, or otherwise, is not truly stated in this policy; or if any change take place in the title, interest, location, or possession of the property (except in case of succession by reason of the death of the assured), whether by sale, transfer, or conveyance, in whole or in part, or by legal process or judicial decree; or if the title or possession be now or hereafter become involved in litigation; or if this policy be assigned or transferred before a loss."

No written application for the policy was requested or made. The insurance was solicited by the company's agent, " who saw the building permit in the paper, and came to the office [Hough's], and wanted to write a policy on the house." No statement as to the condition of the title or as to the nature of Hough's ownership was asked for or given.

Hough, in November, 1887, had bought 10 acres of land for $18,000, a large portion of which had been paid, and had subdivided the land; the house in question being, at the time the insurance was effected, in process of construction on one of the lots known as " Lot 7." He held the whole under a contract of purchase. October 13, 1888, the policy was issued. May 14, 1889, Hough contracted, in writing, to sell to one Stevens this lot 7 for $3,500, which was to be paid as follows: $25 on or before July 1, 1889, and the further sum of $25 in monthly payments thereafter, until the entire sum, with interest, should be paid. Stevens contracted to pay all taxes and assessments upon the property, and to pay the expenses of keeping the buildings insured against loss or damage by fire. Hough agreed, on performance of all of the covenants upon Stevens' part, to execute a good and sufficient deed to Stevens. It was further agreed that—

" The said party of the second part shall have possession of said premises on and after the date hereof, while he shall not be in default on his part in carrying out the terms hereof; * * * and if said party of the second part shall fail to perform his agreements on this contract, or any part of the same, the said party of the first part shall, immediately after such failure, have a right to declare the same void, and may retain whatever may have been paid hereon, and all improve-

ments that may have been made on said premises, to the extent of his just interest therein, and treat the party of the second part as his tenant holding over without permission."

Stevens went into possession at once, and occupied the premises at the date of the fire, although he only made three monthly payments. On July 2, 1890, he was given notice to quit the premises, and that the contract had been declared void. In March, 1890, Hough assigned all his interest in the original contract held by him to plaintiff. At the time of that assignment, Hough assigned the policy to Hall, and Hough and Hall went together to the office of defendant's agent. Hall told the agent that Hough had *"assigned his interest in the property"* to him (Hall), and that he "wanted the policy to read payable to him in case it should burn," and thereupon the consent of the company was indorsed upon the policy.

Upon these facts the court directed a verdict for defendant, and plaintiff appeals.

The record presents two questions:

1. Was this contract valid at its inception?

2. Conceding that the policy was vitiated by the Stevens contract as to Hough, what was the effect of the company's consent to the assignment to plaintiff?

It must be conceded that Hough, at the inception of the policy, had an insurable interest in the property. It is well settled in this State, at least, that an applicant for insurance is not required to show the exact condition of his title, unless requested so to do (*Castner v. Insurance Co.*, 46 Mich. 15; *Guest v. Insurance Co.*, 66 Id. 98); that the failure to mention incumbrances, if not inquired about, the application being oral, and no deceit being practiced, is immaterial (*O'Brien v. Insurance Co.*, 52 Mich. 131; *Tiefenthal v. Insurance Co.*, 53 Id. 306); and that an equitable ownership will support a recital of ownership (*Farmers,' etc., Ins. Co. v. Fogelman*, 35 Mich. 481; *Guest v. Insurance Co., supra*). See 1 May, Ins. §§ 285-287, and 7 Amer. & Eng. Enc. Law, 1020.

In the present case, neither Hough nor Hall was asked to state the nature of his interest in the property or the condition of the title; neither made any misrepresentation or was guilty of any fraud or concealment; and Hough, at the inception of the policy, and plaintiff, at the time of the consent of the company to the assignment to him, had such an interest in the property insured as would support the recitation in the policy that it covered "his two-story frame dwelling." Hough's contract with Stevens was not executed until after the policy had been issued, and when Hall took Stevens was in default; but, in any event, Hall had at that time an equitable interest.

The provisions of the policy in the present case respecting the sole and unconditional ownership of the property, the truthfulness of the statement as to the interest of the assured in the property, and as to any change in the title, interest, location, or possession of the property by sale or transfer, are precisely the same as were passed upon in *Hoose v. Insurance Co.*, 84 Mich. 309, and the Court there held that all the provisions of the contract must be taken together; that, if the insurer desired to know the interest it was insuring, it should have defined that interest in the policy; that it was the intention of the parties to make a binding contract of insurance when accepted by the assured; that the claim as to sole and unconditional ownership could only be held to relate to changes arising after the execution and acceptance of the policy, and did not apply to an existing state or condition of the property at the time that the policy was issued. That case, therefore, disposes of the first question.

The other question is the more serious one, and one upon which the authorities are by no means uniform.

In *Insurance Co. v. Munns*, 120 Ind. 30 (22 N. E. Rep. 78), the assured had mortgaged the property, and afterwards sold it to Munns, and assigned the policy, to which assign-

ment the company, without knowledge or notice of the mortgage, consented.   The court held—

That a contract of insurance is purely a personal engagement, and does not run with the property insured; citing *Nordyke & Marmon Co. v. Gery,* 112 Ind. 535, and *Cummings v. Insurance Co.,* 55 N. H. 454; "that the policy expires with the transfer of the estate, so far as it relates to the original holder, but the assignment and assent of the company thereto constitute an independent contract with the purchaser and assignee, the same, in effect, as if the policy had been reissued to him upon the terms and conditions therein expressed. * * * The contract of insurance, thus consummated, arises directly between the purchaser and the insurance company, to all intents and purposes the same as if a new policy had been issued embracing the terms of the old. In such a case, no defense predicated on supposed violations of the conditions of the policy by the assignor will be available against the assignee. Until the latter himself does some act or permits a condition of things to exist in violation of the terms of the policy, he is not in default." That being a new and independent contract, both parties are subject to the same rules which govern the making of the original contract.

A large number of authorities are cited in support of the conclusions reached.

In *Steen v. Insurance Co.;* 89 N. Y. 315, the court held that the consent to the assignment created a new contract between the company and the assignee, unaffected by the forfeiture, if, in any event, it could have been insisted upon.

In *Shearman v. Insurance Co.,* 46 N. Y. 526, the property was conveyed to plaintiff March 4. The policy was renewed in the name of the grantor March 21, and was assigned to plaintiff April 15, and on the same day the company consented to the assignment. The company insisted that at the time of its consent it had no knowledge of any fact except that at that time it was notified that the property had been conveyed to plaintiff, but the time of the transfer had not been given, nor the fact that the

policy was issued after the transfer. The court held that—

"The renewal revived the original policy, and continued it with all the virtue which it would have had for any purpose if it had not expired; that the consent to the assignment was equivalent to an agreement to be liable to the assignee upon the policy as a subsisting operative contract, for which agreement the retention of the premium received cn the renewal was a good consideration."

In *Hooper v. Insurance Co.*, 17 N. Y. 424, the insurance was upon a stock of goods which had been sold on execution, and the purchaser obtained the consent of the company to an assignment to him, and the court held that the policy became a new contract of insurance between the underwriters and the assignee.

"An assignment, therefore, being of no avail, except in case of an interest in the assignee in the subject insured, the request made to the defendants to consent to an assignment to plaintiff was of itself notice to them that he had acquired or was about to acquire an interest in the insured property. If, therefore, it was important to the defendants to know what the nature of the interest was which the plaintiff had acquired, they should have asked for information in respect to it. If they were content to give their consent without such inquiry, it was their own fault."

In *Ellis v. Insurance Co.*, 64 Iowa, 507 (20 N. W. Rep. 782), it was held that—

"Although the assured may have made statements in his application which by the terms of the policy would defeat a recovery thereon by him, yet, where the insured property is sold and the policy assigned to another, and the company assents to such assignment, a new contract arises, which is not affected by the fraud of the party originally insured."

In *Ellis v. Insurance Co.*, 68 Iowa, 578 (27 N. W. Rep. 762), a majority of the court held that the provision in the policy that, "if the title of the property is incumbered, the policy shall be void," was imported into the

new contract, and that the existence of the mortgage
invalidated that contract.   The court divided upon the
construction of this provision, a minority of the court
holding that it was not against prior or existing incum-
brances, but against those which should fall on the property
subsequent to the execution and delivery of the new con-
tract.   Upon this question the dissenting opinion is in
accord with the case of *Hoose v. Insurance Co., supra.*

In *Ellis v. Insurance Co.*, 32 Fed. Rep. 646, there is a
very able discussion of the question by Brewer, J., who says:

"Where an assignment goes with an absolute sale of the
property, there is the creation of a new contract. If it is a new
contract for one purpose, it is a new contract for all purposes.

"The assignment is expressed to be subject to the terms and
conditions of the policy. What does that mean? It is equiva-
lent to saying that the assignee takes the contract as of present
writing, containing the same terms and stipulations, binding
him to the same duties, and subjecting him to the same lia-
bilities that were imposed by the contract in the first instance
upon the assignor. In no other way can it fairly be said that
a new contract was made. Tested by that rule, the assignee
agreed, as the assignor had agreed in the first instance, that
he would place no incumbrance upon the, property, and that,
if he did, the policy should fail. There is no pretense that he
has violated that stipulation thus construed. It may well be
doubted whether the use of the technical terms 'assignment,'
'assignor,' and 'assignee' are apt to describe the actual trans-
action. When the insured sells the property, that moment
the policy falls. He has no insurable interest. The policy
ceases to have legal force as a policy. Can it be said he is
assigning that which is nothing, and that the insurance com-
pany contemplates and assents to the transfer of that which
has no legal existence? * * * This is a practical ques-
tion, and we must look at these matters in a practical light.
When the purchaser buys the property, naturally the thought
in his mind is insurance. It being his, and the old policy
being dead, he looks for insurance. He finds a policy which
had been in force, dead because of his purchase and cessation
of the insurable interest in the assignor, yet which the insur-
ance company is willing to have transferred to him. Would
it not be an injustice to him if, after the insurance com-
pany has consented to that transfer, it could turn back to

acts done by the person from whom he obtained the policy, and claim that those acts vitiated the whole thing, and rendered it not liable to the assignee? * * *

"But it is said there is really no consideration for this contract on the part of the company. * * * The assignment of this policy is an assertion, practically, by the assignor of a right to an unearned premium, and the claim of such unearned premium, presented to the assignee, is assented to by the company when it consents to the assignment. It matters not that there may have been no actual right to such unearned premium, for the recognition and compromise of a claim is consideration. Further than that there would be the injury to the assignee as well as the benefit to the insurer to be considered.

" Again, it is said that there can be no waiver without knowledge; that the insurance company was ignorant of the fact of this incumbrance; and therefore it should not be held to have waived its rights. There may be estoppel without knowledge. * * * This consent to the assignment, dealing with things in a practical way, must be construed as a statement by the insurance company that it recognized that policy as a valid instrument. Surely it would be unjust to think that the insurance company put itself into the position of assenting to the transfer of a policy which had no validity, going through the form of consenting to that which had no legal existence, and was worthless.

" These considerations, although we concede that the question is one of not perfect transparency, lead us to the conclusion that this assignment must be taken, in the language of the text-books and the authorities, to create a new contract between the assignee and the insurance company,—a new contract embracing, as of present writing, the same terms and stipulations as were embraced in the contract originally written between the assignor and insurer." 2 May, Ins. § 378; Wood, Ins. §§ 110, 366; Fland. Ins. 484; *Cummings v. Insurance Co.*, 55 N. H. 457; *Wilson v. Hill*, 3 Metc. 66; *Flanagan v. Insurance Co.*, 25 N. J. Law, 506; *Pratt v. Insurance Co.*, 64 Barb. 589.

An insurance policy is a personal contract of indemnity. It is non-assignable, except with the assent of the insurer; nevertheless the assignment of policies of insurance is an

incident of nearly every transfer of personal property or improved real estate. Unexpired policies, before loss, have, as a rule, in the hands of the person to whom issued or his assignee, a certain face value, which is the unearned premium or indemnity to the assignee for the unexpired term. They are either transferred as a part of the consideration for the purchase money, or the value of the unearned premium is agreed to be paid in consideration of the assignment. The assignee acquires the right to the unearned premium, or the right to the indemnity for the unexpired term, for value. The right to the unearned premium may be subject to the conditions of the contract, for he takes that right subject to the consent of the company. But suppose that the unearned premium is paid over to the assignee of the policy, or credited upon the premium for a new policy, could it be contended that the company would have the right to recover back the sum so paid or credited from the assignee? The company, in such case, recognizes the validity of the policy, and the assignee is simply reimbursed for what he has paid to the assignor.

The ordinary railroad mileage ticket is not transferable, and attached is a condition that its use by any other person will operate as a forfeiture. Suppose that A. holds such a ticket, which he desires to transfer to B., and they go together to the office of the railroad company, and A. transfers the ticket to B., and the company indorses its consent, B. paying the value represented by the unused strip for the transfer. Could the railroad company be afterwards heard to say, as against B., that A. had, before the transfer, forfeited the contract, even though it had no knowledge of the breach, and therefore the contract was void as to B.? Certainly not. By consent, a new contract between the company and B. is created. The company has agreed with B. that the unused coupons are good in

his hands. The company cannot be said to have waived that which it had no knowledge of, but it has waived the right as against B. to insist upon A.'s infirmities, whatever they may have been. The contract which, prior to the transfer, was personal with A., has ceased, and has become personal with B. B. does not agree that A. has not violated its provision, but only that he will not. Insurance contracts are peculiar, and hence rules applicable to other contracts are applicable to them only so far as the provisions are analogous.

When a party to a non-assignable instrument, representing upon its face an unearned value, consents to its transfer without reservation, and the assignee in good faith pays value for such transfer, the party consenting cannot be heard to set up mental reservations or prior breaches which were unknown to either party. The rule applicable to the transfer of an assignable contract has no application to such contracts. The consent to the assignment imported validity. The right to withhold or grant it is for the benefit of the insurer. It has its burdens as well as its advantages. The application for consent is, in effect, one for a contract of indemnity to the assignee. It affords an opportunity to the company to examine the risk, or to inquire as to the title or interest to be insured, or as to whether there had been any other change in risk or title. Had defendant done so, and refused its consent, plaintiff would have been in a position to retain or recover the consideration paid, and to seek indemnity elsewhere. It is too late now, after the loss, to set up the changed conditions.

It may be said, too, that at the time of the application for the consent of the company to the assignment, plaintiff informed the company that Hough had *assigned his interest* in the property to him. That was sufficient, of itself, to put the company upon inquiry.

Defendant insists, further, that, inasmuch as plaintiff had commenced proceedings against Stevens before a circuit court commissioner to recover possession of the premises, the policy was invalidated thereby.    The policy contained a provision that, "if the title or possession be now or hereafter become involved in litigation," the policy should become void.    Stevens was clearly in default, having occupied the premises for 12 months, and paid but $75, whereas he had agreed to pay $25 per month.    Plaintiff had declared the contract under which Stevens occupied void, as he had the right to do under the contract.    From that moment Stevens became and was a tenant holding over without permission.    The proceeding to recover possession was predicated upon these provisions of the contract. It cannot be contended that the provision of the policy referred to contemplated that, in the event that proceedings were instituted to oust a tenant, the policy should become void.    This provision, taken in connection with the other provisions of the policy, clearly relates to a litigation over the title or possession of the assured.

The judgment must be reversed, and a new trial had, with costs of this Court to the plaintiff.

The other Justices concurred.