STATE MUT. LIFE INS. CO. v. ROSENBERRY et al.    (No. 72–2832.)

(Commission of Appeals of Texas, Section B. June 11, 1919.)

1. INSURANCE ⚖➡124—ISSUANCE OF DUPLICATE POLICY—EFFECT.

The issuance of an exact duplicate of original policy because of mutilation of the original is not the issuance of a new policy, but simply the issuance of a duplicate, and does not affect the rights of the parties.

2. INSURANCE ⚖➡365(1)—LIFE INSURANCE—REINSTATEMENT OF POLICY.

Upon reinstatement of life policy, the policy as originally issued became as effective as if no forfeiture had been declared, unless the contract for reinstatement itself was tainted with such fraud as would justify the company in repudiating it.

---

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. INSURANCE ☞365(1)—LIFE INSURANCE—REINSTATEMENT—FRAUD.**

Insurer, having reinstated lapsed life policy, can defeat liability thereon by asserting and proving that contract by which policy was reinstated was induced by material false representations or warranties.

**4. INSURANCE ☞365(1)—LIFE INSURANCE—REINSTATEMENT—FRAUD.**

Contract for reinstatement of life policy is not a new contract of insurance, but a waiver of the forfeiture, restoring the policy and making it as effective as if no forfeiture had occurred, but reserving the right of the insurer to avoid the effect of reinstatement by showing reinstatement was induced by unfair and fraudulent means.

**5. INSURANCE ☞365(1) — REINSTATEMENT — MISREPRESENTATION—FRAUD.**

Insured's false statement in application for reinstatement of lapsed policy that he had not applied for insurance in any other company which had not been issued was a material misrepresentation, constituting fraud.

**6. INSURANCE ☞400—LIFE INSURANCE—REINSTATEMENT — INCONTESTABLE CLAUSE — FRAUD.**

Insurer can avoid life policy more than a year after issuance thereof upon ground that reinstatement was procured by fraud, notwithstanding clause making policy incontestable after year from its date; such clause not applying to fraud inducing reinstatement.

**7. INSURANCE ☞365(1)—LIFE INSURANCE—REINSTATEMENT—STATUTE.**

Insurer can avoid policy issued prior to January 1, 1910, upon ground that reinstatement of policy subsequent to such date was procured by fraudulent statements, notwithstanding Rev. St. 1911, art. 4953, providing that every policy shall contain the entire contract; such statute not applying to policy originally issued prior to such date.

**8. INSURANCE ☞365(1)—LIFE INSURANCE—REINSTATEMENT—FRAUD.**

Insurer may avoid life policy where reinstatement was secured by fraudulent representations, though representations were made orally.

**9. INSURANCE ☞219—LIFE INSURANCE—ASSIGNMENT OF POLICY—RIGHTS OF ASSIGNEE.**

Assignee or beneficiary of insurance policy takes policy subject to all defenses available before assignment, and is in no better position than insured, either before or after events insured against; the policy not being a negotiable instrument.

**10. INSURANCE ☞393—FIRE INSURANCE—ASSIGNMENT OF POLICY—SALE OF PROPERTY.**

Where insured sells and conveys property covered by policy to a third party, and with consent of insurer assigns policy, a new contract is entered into by insurer with purchaser which will not be affected by any previous breach on part of vendor.

**11. INSURANCE ☞393 — REINSTATEMENT — FRAUD—ESTOPPEL.**

Insurer, having reinstated lapsed life policy, was not estopped from asserting invalidity of reinstatement because of consent to assignment, where it was ignorant of the deception practiced at time of reinstatement, and immediately on discovery thereof gave notice that it would no longer be bound by the policy.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by Charles M. Rosenberry and another against the State Mutual Life Insurance Company. Judgment for plaintiffs affirmed by the Court of Appeals (175 S. W. 757), and defendant brings error. Reversed and rendered for defendant.

Maddox & Doyal, of Rome, Ga., Harris & Brittain, of Quitman, and Seay & Seay, of Dallas, for plaintiff in error.

R. B. Howell and J. H. Beavers, both of Winnsboro, for defendants in error.

MONTGOMERY, P. J. This is a suit upon a policy of life insurance issued by the State Mutual Life Insurance Company upon the life of Elmer E. Rosenberry. Charles M. Rosenberry, the beneficiary, and Woodie Rhone, a creditor of Elmer E. Rosenberry, to whom the policy had been assigned as collateral security for a debt, joined as plaintiffs. The pleadings of the parties are shown in the opinion of the Court of Civil Appeals. 175 S. W. 757.

The insurance company in the year 1908 issued the policy to Elmer E. Rosenberry for $10,000. The policy contained a clause making it incontestable after one year from the date of its issuance. The premiums were payable annually on January 15th of each year in advance. The premiums were paid as they became due until January 15, 1912. The premium falling due on that date was not paid, and the policy thereupon lapsed, and it had no value in excess of a loan that had been made to the insured.

On November 14, 1912, Elmer E. Rosenberry made application in writing to the insurance company for a reinstatement of the policy. In this application, among other things, he represented to the insurance company that he had not since the date of the policy been examined for life insurance without a policy having been issued as applied for. He warranted the statement in his application to be true. The court of Civil Appeals held this representation to be untrue and material.

By application dated October 26, 1912, Elmer E. Rosenberry applied for a change in beneficiary, as provided for in the policy, and informed the company that he had changed the beneficiary from his estate to his brother Charles M. Rosenberry. This

application, though dated October 26, 1912, was not received by the company until November 20, 1912. On November ,6, 1912, Elmer E. Rosenberry and Charles M. Rosenberry assigned the policy to Woodie Rhone to secure him in the payment of an indebtedness due him by Elmer E. Rosenberry, and a duplicate of this assignment was given to and retained by the insurance company.

It further appears that the original policy had in some way become mutilated, and it was returned to the company, and request made that a duplicate or new policy be issued.

On December 9, 1912, the company accepted the application to reinstate the policy, and on the same day attached to the policy a statement to the effect that the beneficiary had been changed, as provided in the request of Elmer E. Rosenberry. This indorsement was actually made on December 9, 1912, but was dated October 26, 1912. It was shown by the testimony that it was the custom of the company to date the indorsement of the change of beneficiary as of the date of the request, and that this was done for clerical convenience only. The indorsement above referred to was made upon the duplicate of the original policy which was issued to take the place of the policy which had been mutilated. This duplicate was a literal copy of the original policy and was not marked "duplicate." Neither Charles M. Rosenberry nor Woodie Rhone knew of the lapse of the policy or of its reinstatement, and knew nothing of the false statements contained in the application to reinstate the policy. The insurance company in reinstating the policy relied on the statements contained in the application, and knew nothing of the false statements until after the death of Elmer E. Rosenberry, which occurred on July 1, 1913. The insurance company, immediately upon learning of the false statements contained in the application to reinstate the policy, repudiated the policy, and promptly notified both Rhone and Rosenberry of that fact.

The trial court rendered judgment for the plaintiffs for the full amount of the policy, and this judgment was by the Court of Civil Appeals affirmed.

### Opinion.

For the purpose of showing the views of the Court of Civil Appeals and the reasons given for its decision, we quote the following from its opinion:

"The deceased, Rosenberry, having answered incorrectly, as shown above, to questions propounded by appellant, and upon which answers the reinstatement of the policy was based, would be sufficient to avoid the policy, notwithstanding the incontestable clause in the policy, for we are of the opinion that the incontestable clause was revivified by the reinstatement and did not bar the appellant from contesting the right of recovery for acts of the deceased in procuring a reinstatement of the policy, one year not having elapsed after said reinstatement.

"However, we regard the foregoing as immaterial to a decision of this case, notwithstanding the false answers; for we think the appellant is estopped from urging said matters as a defense by reason of the assignment of the policy to secure an indebtedness. When an insurance company issues a policy and thereafter consents to its assignment, a new contract is thereby created, and the assignee takes free from all vitiating circumstances of which he is innocent, and the company is estopped from denying its validity, though ignorant of any vice that would forfeit the policy, before its issuance. Ellis v. Insurance Co. (C. C.) 32 Fed. Rep. 640."

There are only two questions which we think it necessary to decide: First, whether article 4953, Revised Statutes, applies to this case so as to deny the insurance company the right to defend this suit upon the ground of fraud and false representations in obtaining a reinstatement of the policy; second, whether, conceding the fraud and false representations, the insurance company was estopped as against the beneficiary, Charles M. Rosenberry, and the creditor, Woodie Rhone, to deny the validity of the policy.

Article 4953, Revised Statutes, which was originally enacted in the year 1909, reads as follows:

"Every policy of insurance issued or delivered within this State on or after the first day of January, 1910, by any life insurance company doing business within this state, shall contain the entire contract between the parties, and the application therefor may be made a part thereof."

[1] The fact that in 1912, on account of a mutilation of the original, an exact duplicate of the original policy was issued, we do not think material. This was not the issuance of a new policy, but simply the issuance of a duplicate. The transaction should be judged as if the new policy had not been issued.

The question then is whether a life insurance company, where a policy has lapsed for nonpayment of premium, and has been induced by fraudulent representations to reinstate the policy, can rely upon the fraud to avoid liability where neither the application to reinstate nor any reference thereto is indorsed on or attached to the policy.

The article of the Revised Statutes quoted above requires that every policy issued by a life insurance company after January 1, 1910, shall contain the entire contract between the parties. Unless the reinstatement is treated as an entirely new and independent contract of insurance and the issuance of the duplicate of the original in this case treated as a new policy, this statute can have no application.

The original contract of insurance was issued prior to 1910, and at a time when the statute quoted had not been enacted. There-

fore, but for the forfeiture and reinstatement, no contention that it applied to this policy could be made.

[2, 3] After the lapse of the policy on account of the failure to pay the premium no contract of insurance between the parties existed. The insured and the company, however, had the right to make a contract by which the company should waive the forfeiture and reinstate the policy. When thus reinstated, the policy as originally issued became as effective as if no forfeiture had been declared, unless the contract for reinstatement itself was tainted with such fraud as would justify the company in repudiating it. Under the incontestable clause of the policy the company was precluded from any defense which it might otherwise have had based on anything which occurred at the time of or prior to the issuance of the policy, and also of any defense based upon any breach of warranty on the part of the insured contained in the original application or policy. It, however, had the right to assert and prove that the contract by which the policy was reinstated was induced by material false representations or warranties, and thus defeat liability on the policy. As we understand the record, this is what the insurance company attempted to do in this case.

There is some conflict in the authorities as to the effect of a reinstatement of a policy after lapse for failure to pay the premium. Some courts hold that there is a new contract of insurance as of the date of the reinstatement, but containing all the terms of the original policy, and thus hold that the clause rendering the policy incontestable applies to the new contract and authorizes a contest for the period named after the reinstatement. Pacific Mutual Life Insurance Co. v. Galbraith, 115 Tenn. 471, 91 S. W. 204, 112 Am. St. Rep. 862, and cases cited.

[4] But we think that the better rule and the one that would come nearer doing justice is to regard the contract for reinstatement, not as a new contract of insurance, but as a waiver of the forfeiture, thus restoring the policy and making it as effective as if no forfeiture had occurred, but reserving the right of the company to avoid the effect of the reinstatement by showing, if it can, that the reinstatement was induced by unfair and fraudulent means. Massachusetts Benefit Life Association v. Robinson, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 274; Goodwin v. Provident, etc., Life Association, 97 Iowa, 226, 66 N. W. 157, 32 L. R. A. 473, 59 Am. St. Rep. 411; Monahan v. Fidelity Mutual Life Insurance Co., 242 Ill. 488, 90 N. E. 213, 134 Am. St. Rep. 337; Mutual Life Insurance Co. v. Lovejoy, 78 South. 299, L. R. A. 1918D, 864.

[5, 6] Applying these principles to the case, it appears that the policy sued on lapsed for failure to pay the premium after the same became incontestable under its terms, and we think that the insurance company could not contest it by reason of anything connected with its original issuance or any act of the insured up to that time. When it lapsed for failure to pay the premium, no contract of insurance existed, but the parties had a right by a new contract to provide for a waiver by the company of the forfeiture and a reinstatement of the policy. The insured undertook to comply with the requirements of the company in order to obtain a reinstatement, and to that end made an application warranting the facts stated therein to be true. As we construe the opinion of the Court of Civil Appeals, it finds that the statement in the application to the effect that the insured had not applied for insurance in any other company which had not been issued was untrue and was material. This being true, the application to reinstate the policy was induced by the fraud of the insured. We do not think that the clause in the policy making it incontestable after one year from its date applies to this transaction. To make it apply is to hold that, however gross the fraud by which the reinstatement of a lapsed policy is procured, the insurance company is without remedy. In this case less than one year after the perpetration of the fraud had elapsed, and we think the insurance company had the right to show that the reinstatement was secured by material fraudulent representation, and that therefore the contract of reinstatement was void, and that the policy was not thereby revived.

[7] We are further of the opinion that article 4953 of the Revised Statutes has no application to this case. According to its terms, it has no application to policies issued prior to January 1, 1910, nor to the method of reinstating such policy. It was intended to apply prospectively to policies issued after its enactment, and not in any manner to affect the rights of the parties growing out of the insurance contracts theretofore issued. It is not necessary for us to decide what the rights of the parties would be under contracts of insurance issued after January 1, 1910.

The Alabama case of Mutual Life Insurance Co. v. Lovejoy, 78 South. 299, L. R. A. 1918D, 864, and the case of Massachusetts Benefit Life Ass'n v. Robinson, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261, cited by defendants in error, are not in conflict with the view we have expressed. In the Alabama case there was issued on March 2, 1912, a life policy providing that the same should be incontestable after two years from its date. The premium due March 2, 1914, was not paid, and notice was given by the insurance company of the forfeiture of the policy. The insured made application for reinstatement of the policy, and the company approved the application, and upon payment of the premium with interest reinstated the policy. By the application for reinstatement the insured

agreed that the insurance company should not be liable for any amount on the policy in the event the insured should die by his own hand within one year. The insured committed suicide on September 22, 1914. The insurance company pleaded the agreement contained in the application for reinstatement of the policy as a bar to the suit. Long prior to the issuance of the policy section 4579 of the Alabama Code of 1907 was in force. This section reads as follows:

"No life, nor any other insurance company, nor any agent thereof, shall make any contract of insurance, or agreement, as to policy contract, other than is plainly expressed" therein.

The Alabama court held that the application for reinstatement and acceptance thereof came within the terms of this statute, and, not having been included in or made a part of the policy, that no defense founded thereon could be asserted. The court further held that the effect of the reinstatement was to revive the policy, and not to make a new contract of insurance, and that the clause in the original policy making it incontestable two years after its issuance applied. It will be noted that the Alabama statute was in force when the policy was issued. The statute is, we think, broader than the Texas statute. The Alabama statute forbids the making of any contract of insurance or agreement as to policy contracts other than is plainly expressed in the policy, while the Texas statute simply requires that the policy shall contain the entire contract. There is nothing in the Texas statute requiring collateral agreements affecting the policy made subsequent to its issuance to be included in or attached to the policy. There is a still better reason why the rule contended for should not apply in this case. In the Alabama case there was no false statement made which induced the reinstatement of the policy. It was a case in which the new agreement, if enforced, would have relieved the company from liability for a loss for which it would have been liable under the original policy. The court in that case held that there was no evidence that the renewal contract was obtained with the intention of self-destruction, and that there was no fraud. The court said:

"In such case [that is, a case of fraud] there would not in law be a binding contract because of the inherent intent to violate or evade the law, or of actual fraud in procuring the contract of insurance."

This distinction between the importation of new terms and conditions into the contract and the effect of fraud in procuring a reinstatement of the contract is clearly shown by reference to the case of Mutual Life Insurance Co. v. Allen, 166 Ala. 167, 51 South. 877, where the identical provision above referred to was under consideration, and also the case

of Insurance Co. v. Verneuille, 156 Ala. 592, 47 South. 72.

In the first case it is said:

"We did not hold * * * in the Verneuille Case, * * * that section 4579 was broad enough to exclude false and fraudulent representations inducing the contract or agreement, and which did not become warranties or agreements. Nor can we so construe this section in the case at bar, as it expressly applies only to contracts and agreements, and not to misrepresentations made with the actual intent to deceive, and which would increase the risk of loss."

So in this case we are constrained to hold that article 4953 of the Revised Statutes of 1911 cannot be so applied as to prevent the insurance company from avoiding the reinstatement contract upon the ground that it was induced to make the agreement reinstating the policy by false representations of material facts. It may be conceded that these statements did not enter into and become a part of the contract, but they were the inducements to the making of the contract, and, being material and false, furnished ground for avoiding the contract.

The case of Massachusetts Benefit Life Insurance Ass'n v. Robinson, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261, cited by defendants in error, also supports our conclusion. In that case the court held that the policy sued on had never in fact lapsed, and in that connection used this language:

"If there was a lapse of the policy, either growing out of the failure to pay the premiums due on October 27, 1892, February 27 or May 27, 1894, and a reinstatement was necessary on account of any of these lapses, and such reinstatement was secured by a certificate furnished by the insured in which there was a statement that he was in good health, and such statement was false, and so material that his conduct would amount to a fraud, then the effect of the fraud would be to render his reinstatement void, and the policy would remain lapsed."

This statement of the law exactly fits the facts of this case. The only case which we have found which holds that a policy may not be avoided for false representations made to secure reinstatement after lapse is Goodwin v. Provident, etc., Life Insurance Co., 97 Iowa, 226, 66 N. W. 157, 32 L. R. A. 476, 59 Am. St. Rep. 411, in which it was held that the life insurance company could not rely upon false representations made in an application to reinstate the policy unless the application was made a part of the contract. The statute of Iowa under which this holding was made provided that "all insurance companies or associations shall upon the issue, or renewal, of any policy attach to such policy, or indorse thereon, a true copy of any application or representation of the insured, which, by the terms of the policy, are made a part thereof, or of the contract of insurance, or referred to therein, or which may in

any manner affect the validity of such policy" (McClain's Code, § 1733), and provides further that failure to do so shall preclude the company from alleging or proving such agreement or representations, or any part thereof, or any falsity thereof in any action on the policy.

The difference between our statute and the Iowa statute is apparent. The Iowa statute requires every agreement or representation made for the purpose of securing a renewal of a policy, or which may affect the validity of the policy, to be made a part of the policy, and forbids any defense founded upon any such application or statement unless the statute is complied with. With us there is no such requirement.

[8] We think that, where a reinstatement is secured by fraudulent representations, even orally made, such representations may furnish ground for avoiding the policy.

We now come to consider the ground upon which the Court of Civil Appeals affirmed the judgment of the trial court; that is, that the insurance company by consenting to the assignment of the policy by the insured to Woodie Rhone, and by consenting to a change in the beneficiary, was estopped to assert its invalidity.

[9] An insurance policy is not a negotiable instrument. The assignee or beneficiary of the policy, whether before or after the occurrence of the event insured against, is in no better attitude than the insured. They take subject to all defenses which would have been available had no assignment been made. This is the general and accepted rule everywhere. Swenson v. Sun Fire Office, 68 Tex. 461, 5 S. W. 60; Phœnix Fire Insurance Co. v. Willis, 70 Tex. 12, 6 S. W. 825, 8 Am. St. Rep. 566; East Texas Fire Insurance Co. v. Coffee, 61 Tex. 287; Burruss v. National Life Ass'n, 96 Va. 543, 32 S. E. 49; Langdeau v. John Hancock Life Insurance Co., 194 Mass. 56, 80 N. E. 453, 18 L. R. A. (N. S.) 1190; Lock v. Bowman, 168 Mo. App. 121, 151 S. W. 468; Joyce on Insurance, § 3226; Cooley on Insurance, vol. 3, p. 1020.

[10] The case of Ellis v. Insurance Co. (C. C.) 32 Fed. 646, and the cases of Insurance Co. v. Gunter, 12 Tex. Civ. App. 598, 35 S. W. 715, Home Mutual Insurance Co. v. Nichols, 72 S. W. 440, Hall v. Niagara Fire Insurance Co., 93 Mich. 184, 53 N. W. 727, 18 L. R. A. 135, 32 Am. St. Rep. 497, and other cases following the Ellis Case, are clearly distinguishable from the case under investigation. The Ellis Case, and cases following it, were suits on policies of fire insurance in which, after breach of warranties or conditions rendering the policy void, the insured had sold and conveyed the property covered by the policy to a third party, and had also with the consent of the insurance company assigned the policy. In such cases it is generally held that, where the subject-matter of the contract is conveyed, and the policy assigned with the consent of the insurance company, it is in effect the making of a new contract by the insurance company with the purchaser, which will not be affected by any previous breach on the part of the vendor. These decisions we think sound. In this class of cases the vendor has no longer any interest in the subject-matter of the insurance, and the courts very properly hold that the sale and conveyance of the property puts an end to the insurance contract, and that the assignee of the policy gets only the right to the unearned premium. When the insurance company consents to the assignment, it is equivalent to an agreement with the vendee that, in consideration of the unearned premium, the insurance company agrees to insure the property upon the terms of the policy for the unexpired term. Such a transaction is in fact the making of a new contract. The vendor ceases to be a party to the contract, and thereafter has no interest either in the property insured or the contract of insurance. But even in fire insurance cases it has never been held, so far as we can find, that the assignee of a fire insurance policy who takes the same as security for a debt is in any better attitude than the assignor. All the cases hold that one who takes a transfer of an insurance policy as mere collateral to secure a debt holds it subject to every defense which exists as against the insured.

The case of Swenson v. Sun Fire Office, 68 Tex. 461, 5 S. W. 60, clearly recognizes the distinction between the rights of a vendee of property insured, to whom with the consent of the insurance company the policy is assigned, and the rights of a mere creditor of the insured, to whom the policy is assigned as collateral. The distinction referred to also appears upon a careful reading of the Ellis Case decided by Judge Brewer. The whole argument made by him is based upon the fact that upon a sale of the subject-matter the contract of insurance ceases to exist, and that the consent to the assignment of the policy to the purchaser of the property creates a new agreement. No such argument can be made in favor of the assignee of a life policy who takes it as security for debt.

[11] No facts were shown in this case which can estop the insurance company. The undisputed evidence shows that the insurance company was ignorant of the deception practiced at the time the policy was assigned, and remained in ignorance thereof until after the death of the insured, and that it at once upon the discovery of the fraud gave notice that it would not be longer bound by the policy.

We have not thought it necessary to argue the question of the right of the beneficiary to recover on the policy. We have found no authority which, conceding the fraud on the

part of the insured, holds that the beneficiary can recover. All the authorities are to the contrary.

After a careful consideration of the entire record, we have concluded that the judgment of the trial court and the Court of Civil Appeals should be reversed.

The representation found by the Court of Civil Appeals to have been untrue, is, we think, as a matter of law material to the risk, and the uncontroverted evidence shows that it was relied on by the insurance company, and that but for the representation the reinstatement of the policy would not have been granted. Such a representation is held material as a matter of law by practically all the courts in this country. R. C. L. vol. 14, p. 1080; March v. Metropolitan Life Ins. Co., 186 Pa. 629, 40 Atl. 1100, 65 Am. St. Rep. 887; Masonic Life Association v. Robinson, 149 Ky. 80, 147 S. W. 882, 41 L. R. A. (N. S.) 505; Mutual Life Insurance Co. v. Dibrell, 137 Tenn. 528, 194 S. W. 581, L. R. A. 1917E, 554, and note; Joyce on Insurance, § 2075; 25 Cyc. 819.

There is nothing in the record to indicate that the case has not been fully developed, and we therefore recommend that the judgment of the trial court and the Court of Civil Appeals be reversed, and judgment here rendered for the insurance company.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.