### HANOVER FIRE INS. CO. v. DALLAVO.

(Circuit Court of Appeals, Sixth Circuit. July 6, 1921.)

No. 3507.

1. **Insurance ⬅146(2)—In absence of waiver contract must be enforced at law as written.**

   In an action at law on an insurance policy, the terms written therein, unless waived either by the parties themselves or some one authorized to make such waiver, must be enforced as written.

2. **Insurance ⬅372—Any provisions of policy may be waived.**

   An insurance company may waive any provisions in a policy for its protection, including even a provision that a waiver must be indorsed on the contract itself.

3. **Insurance ⬅392(1)—Conditions of policies held waived by retention of premiums.**

   Provisions of fire policies that they should be void if a building insured was on ground not owned in fee simple by the insured, or if he was not the unconditional and sole owner of the property insured, or if the subject insured was personal property and was or became incumbered by chattel mortgage, unless otherwise provided by agreement indorsed on the policies, *held* waived where the company long prior to the loss acquired actual knowledge that the building and stock of lumber insured were on land leased by the insured from a railroad company, but retained the premiums and left the policies outstanding.

4. **Insurance ⬅392(1)—Insurer accepting benefits of contract with full knowledge estopped to avoid its burdens.**

   Where the insurer has full knowledge of all the facts in relation to the subject-matter of the contract, 'and continues to accept all its benefits, it cannot reject its burdens.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Insurance** ⟲➞152(3)—**Statute becomes a part of contract.**

A statute prescribing the scope and effect of contracts of insurance and the duties and obligations of the parties is as much a part of contracts, written while it is in force, as though incorporated into them, and such contracts are not affected by its repeal.

**6. Witnesses** ⟲➞405(1)—**Cross-examiner cannot contradict answers to impeaching questions, raising collateral issue.**

While a witness may be asked questions on cross-examination having no relation to the case for the purpose of affecting his credibility, his answers cannot be contradicted by other parol testimony; thus raising a collateral issue.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action at law by John Dallavo against the Hanover Fire Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Robert E. Plunkett, of Detroit, Mich. (Frederick J. Ward, of Detroit, Mich., on the brief), for plaintiff in error.

Harris E. Thomas, of Lansing, Mich. (Thomas, Shields & Silsbee, of Lansing, Mich., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. On February 8, 1918, John Dallavo brought action against the Hanover Insurance Company in the circuit court of Ingham county, Mich., to recover upon four separate fire insurance policies. On application of the insurance company this cause was removed to the District Court of the United States for the Eastern District of Michigan, Southern Division. Upon the trial, and at the close of all the evidence, the defendant moved the court to direct a verdict in its favor, which motion was overruled, and the court thereupon directed the jury to return a verdict for the plaintiff for the aggregate amount of the sums named in these several policies of insurance with interest thereon. Judgment was entered upon this verdict. The plaintiff in error seeks a reversal of this judgment upon substantially two grounds of error:

(1) The overruling of its motion for a directed verdict.

(2) Error of the court in the rejection of competent and relevant evidence offered on behalf of the defendant.

There are other assignments of error, but the brief of counsel for plaintiff in error is devoted to the two assignments above stated, and in reference to the other assignments the following statement is made:

"The other assignments of error, 3, 4, and 5, are fully covered in the argument on the first one, as it naturally follows, if we are right in the request for direction of verdict on the grounds of a breach of contract, then a direction of verdict for the plaintiff was in error."

Each of the policies issued by the plaintiff in error is a standard Michigan fire insurance policy, as required by the statutes of that state. Each contains a clause providing that the entire policy shall be void if the subject of insurance is a building on ground not owned by the in-

sured in fee simple, or if the assured was not the unconditional and sole owner of the property insured, or if the subject of insurance be personal property and be or become incumbered by chattel mortgage, unless otherwise provided by agreement indorsed on the policy or added thereto. Each policy also contained the further provision that the entire policy shall be void if the assured concealed or misrepresented in writing or otherwise any material fact or circumstance concerning this insurance or the subject thereof, or if the interest of the assured be not truly stated in said policy, or in case of fraud or false swearing by the assured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

At the time this insurance was written, and at the time the loss occurred, John Dallavo was operating a retail lumber business at Webberville, Mich. His lumber yard was located on land leased from the Pere Marquette Railroad Company. On this ground he erected an office building and sheds for the storing of lumber and coal.

Some time prior to the date of the second policy of insurance (No. 149) a chattel mortgage to secure the payment of $1,500 was executed and delivered by Dallavo to the Farmers' State Bank of Webberville, Mich., upon this office building and storage sheds, lumber, and other merchandise in the yard. This chattel mortgage continued in force until the loss occurred, but before the loss did occur it was reduced by payment to $500.

The second policy contained this provision:

"Loss, if any, payable to Farmers' State Bank, Webberville, Mich., as their mortgage interest may appear."

The fourth policy (No. 154) contained a similar provision, but nothing appeared either in the first or third policies in reference to this chattel mortgage, and no waiver thereof was indorsed upon either.

Dallavo had been engaged in this lumber business at this place for about three years prior to the date of this loss, during which time this insurance company through its local agent, John Marshall, had written all the insurance carried upon this property by Dallavo. These four policies now in suit were all renewals of expired policies, or additional insurance to cover increased value of stock then on hand. No written application was made by Dallavo for this insurance. The agent, Marshall, does not remember whether Dallavo applied for this insurance or he solicited him to take the same. At all events the agent testified that he knew that these buildings were on leased ground; that he was also cashier of the Farmers' State Bank of Webberville, Mich., and as such cashier had taken from Dallavo a chattel mortgage covering buildings and lumber to secure the payment of $1,500 due to that bank; but he does not remember whether that mortgage was executed and delivered to the bank before or after the first policy of insurance was issued. Under the terms and provisions written into the policies, Marshall had authority, as agent, to waive these conditions both as to the ownership of the ground and the existence of the chattel mortgage, but he further testified that, while he fully knew and understood that

the ground was leased by Dallavo from the railroad company, and that the bank of which he was cashier had a $1,500 chattel mortgage upon this property, he did not know that it was necessary for him to indorse this waiver upon each of these policies; that his purpose in writing into the second policy for $2,500, "Loss, if any, payable to the Farmers' State Bank of Webberville, Mich., as their mortgage interest may appear," and his purpose in writing a similar provision in the fourth policy for $1,000 was solely and only for the protection of the bank; that he considered these two policies amply sufficient for its protection, and therefore wrote no like provision in or made any indorsement upon the other two.

It is therefore clear from the testimony of Marshall that Dallavo made no false or fraudulent representation; that the agent, Marshall was fully advised of Dallavo's lack of title and the existence of this mortgage, and that, with knowledge thereof, it was his intention and purpose to waive these conditions and issue to Dallavo valid insurance to the amount named in each of these policies; that he believed in good faith he had done so, notwithstanding it now appears that he did not indorse this waiver as to the chattel mortgage upon two of these policies and did not indorse any waiver thereon in reference to the ownership of the ground upon which the buildings were situated. It is equally clear that Dallavo was acting in good faith; that he did not understand the necessity of this indorsement upon these policies; and that he relied upon Mr. Marshall as agent of the insurance company to give him valid insurance, for which he paid the price demanded.

The provision in the contract of insurance with reference to the ownership by the insured of the land upon which the buildings that are the subject of the risk are situated, and with reference to chattel mortgages upon personal property, are substantial in their nature. The method by which an agent is required to evidence a waiver of these conditions is formal, and yet, in the absence of a statute to the contrary, the insurance company is clearly entitled to have this provision enforced.

[1] The presumption obtains that parties to a contract fully understand all its provisions. If the contract is obtained by fraud, duress, or mutual mistake, or if by inadvertence it fails to express the true intent, agreement, and purpose of the parties, a court, in a proper action, may order the contract rescinded or reformed, but in an action on the contract the terms written therein, unless waived either by the parties themselves or some one authorized to make such waiver, must be enforced as written. Lumber Underwriters v. Rife, 237 U. S. 605, 35 Sup. Ct. 717, 59 L. Ed. 1140; Northern Assurance Co. v. Building Association, 183 U. S. 308–321, 22 Sup. Ct. 133, 46 L. Ed. 213.

[2] The insurance company may, however, waive any provisions in a policy for its protection, including even the provision that the waiver must be indorsed upon the contract itself. Ins. Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689; Ins. Co. v. Raddin, 120 U. S. 183–196, 7 Sup. Ct. 500, 30 L. Ed. 644; Assurance Co. v. Building Ass'n, 183 U.

S. 308–352, 22 Sup. Ct. 133, 46 L. Ed. 213. If, therefore, this insurance company during the terms covered by these policies, with full knowledge of the facts, separate and apart from the knowledge of the agent, waived these provisions, or by its acts and conduct after it acquired such knowledge has, in good conscience and fair dealing, estopped itself from asserting the failure to comply therewith as a defense to this suit, then the question of the agent's knowledge or authority to waive conditions or the manner in which such waiver must be evidenced wholly disappears from this case.

In the case of Northern Assurance Co. v. Building Assn., supra, the Supreme Court qualified the declaration that "mere knowledge by the agent * * * will not affect the company" with the statement "unless it is affirmatively shown that such knowledge was communicated to the company."

[3] The contention of plaintiff in error that the court erred in overruling its motion for a directed verdict is based solely upon the ground that the knowledge of the local agent that these buildings were on leased property, and that there was a chattel mortgage upon the property insured, does not affect the company or charge it with knowledge of these facts in the absence of a written waiver by such local agent indorsed upon these policies. These contracts are Michigan contracts, and it would appear that the Supreme Court of Michigan has announced a different doctrine. Richards v. Insurance Co., 60 Mich. 420, 27 N. W. 586; Bryant v. Ins. Co., 174 Mich. 102, 140 N. W. 482; Dahrooge v. Ins. Co., 175 Mich. 248, 141 N. W. 572; Gristock v. Ins. Co., 87 Mich. 428, 49 N. W. 634; Brunswick-Balke-Collender Co. v. Ins. Co., 142 Mich. 29, 105 N. W. 76; Hall v. Ins. Co., 93 Mich. 184, 53 N. W. 727, 18 L. R. A. 135, 32 Am. St. Rep. 497.

These cases were followed by the case of Gordon v. Ins. Co., 197 Mich. 226, 163 N. W. 956, L. R. A. 1918E, 402, in which it was held that the standard policy act of Michigan of 1905 (Pub. Acts 1905, No. 277) was designed to curb the right of insurance companies to declare forfeitures, and not to make them more favorable. However, the federal rule as announced by the Supreme Court, in the case of Northern Assurance Co. v. Building Ass'n, supra, would seem to support fully the claim of plaintiff in error, although the contract there under consideration was a Nebraska contract, and it does not appear that the Supreme Court of Nebraska had established any different rule in relation to such contracts. However that may be, the argument of counsel for plaintiff in error wholly overlooks the evidence in this case tending to show affirmatively that the Hanover Fire Insurance Company acquired direct and positive knowledge of the existence of this chattel mortgage, and that Dallavo was not the sole and unconditional owner of the property insured, long prior to the date of the loss, and, having such knowledge, not only retained the unearned premium and continued such policies apparently in full force, but also did such affirmative acts in relation to these policies that in good conscience and fair dealing it must now be estopped from asserting the failure to comply with these conditions as a defense to this suit.

The second and fourth policies by the written provision contained therein brought home to the insurance company the knowledge of the existence of this mortgage, and that Dallavo was not the sole and unconditional owner of the property insured. It waived these conditions as to these two policies, and did this with the full knowledge that it then had two outstanding policies covering the same property. There is also further evidence in this record tending to prove the knowledge of the insurance company that these buildings were on leased ground. Mr. Allshouse, the state agent of the company, in the course of his investigation of the different outstanding risks in the state was fully advised that Dallavo was renting this ground from the railroad company for $33 per year. There is no evidence, however, that he communicated this knowledge directly to the company, but, in view of the fact that in the very nature of his employment it was his duty to report to the home office all facts that he may have discovered in relation to its outstanding risks, proof that he had obtained such knowledge would perhaps place the burden upon this company to show that he had not in fact communicated it to his principal.

[4] It is of no importance whether the contract be one of insurance or in relation to some other business transaction. When one of the contracting parties has full knowledge of all the facts in relation to the subject-matter of the contract, and continues to accept all its benefits, he cannot, after having accepted these benefits reject the burden on his part to be performed. In discussing this proposition in the case of Insurance Co. v. Raddin, 120 U. S. 183–196, 7 Sup. Ct. 500, 506 (30 L. Ed. 644), Mr. Justice Gray said:

"To hold otherwise would be to maintain that the contract of insurance requires good faith of the assured only, and not of the insurers, and to permit insurers, knowing all the facts, to continue to receive new benefits from the contract while they decline to bear its burdens"—citing Insurance Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387; Wing v. Harvey, 5 D., M. & G. 265; Frost v. Saratoga Ins. Co., 5 Denio (N. Y.) 154, 49 Am. Dec. 234; Bevin v. Connecticut Ins. Co., 23 Conn. 244; Insurance Co. v. Slockbower, 26 Pa. 199; Viele v. Germania Ins. Co., 26 Iowa, 9, 96 Am. Dec. 83; Hodsdon v. Guardian Ins. Co., 97 Mass. 144, 93 Am. Dec. 73.

This same proposition was declared and applied in the cases of Montano v. Mutual Aid Society, 72 Misc. Rep. 515, 130 N. Y. Supp. 455; Insurance Co. v. Forlines, 94 Ark. 227, 126 S. W. 719; Insurance Co. v. Johnson, 49 Ind. App. 233, 94 N. E. 785; Black v. Ins. Co., 171 Iowa, 309, 152 N. W. 7; Allen v. Insurance Co., 14 Idaho, 728, 95 Pac. 829; and Bank v. Ins. Co., 83 Ohio St. 309, 94 N. E. 834.

The underlying principle upon which the statement above quoted from Insurance Co. v. Raddin, supra, is based is fully discussed and clearly expressed by Mr. Justice Miller in the case of Insurance Co. v. Wilkinson, 80 U. S. (13 Wall.) 222, at page 233, 20 L. Ed. 617, at page 622, and it is there declared that this principle has been applied to this precise class of cases.

In the instant case, while the insurance company did not actually accept payment of premium for these policies after the time the evidence tends to show that it acquired knowledge of the existence of the

outstanding mortgage, nevertheless Dallavo had paid to the insurance company a premium covering the entire periods named in these policies. The retention of that unearned premium with full knowledge of the facts was and is equivalent to the acceptance of payment, day by day, during the time it retained such unearned premiums, which premiums it was entitled to retain only upon the theory that the policies were valid.

While it is true that the provision in the second and fourth policy does not specifically state that the mortgage is a chattel mortgage, yet it is clear that sufficient appears therein to charge the company with notice of this particular mortgage and with knowledge of whatever facts in relation to Dallavo's title to this property this mortgage would disclose, at least so far as these two policies are concerned. Therefore as to these two policies neither of these defenses can obtain. It was also notice to the insurance company of an outstanding mortgage on the property it had agreed to insure and for which insurance it had accepted and retained the premiums paid by Dallavo. The conduct of the insurance company in issuing these two additional policies with knowledge that the subject-matter of the risk was under mortgage to the Farmers' State Bank, without objection or cancellation of the other policies or the return of the premium paid therefor, was such an affirmative act on its part that it could have had no other effect than to mislead Dallavo into the belief that the first and third policies were valid in so far as these defenses are concerned.

Of far more importance, however, is the evidence of the affirmative act of the insurance company in the issuing under date of June 9, 1917, of form No. 113, containing a blanket clause covering buildings and personal property, to be attached to and made a part of the first, second, and third policies. The insurance company then had full knowledge as to the existence of a mortgage, and also of the fact that by reason of this mortgage Dallavo was not the sole and unconditional owner of this property. This was not only an affirmative act, reaffirming the validity of these three policies as against these conditions, but it was to all intents and purposes a reissuing of these policies as of June 9, 1917, with knowledge of the breach of these conditions and with knowledge that its agent had not indorsed a waiver of these conditions upon two of them.

The affirmative acts of the insurance company in issuing on June 9, 1917, form No. 113, to be attached to the three policies in existence at that time, has application also to the defense offered by the insurance company that the agent failed to indorse upon these policies a waiver of the condition that the insured must be the owner in fee simple of the ground upon which the buildings were situated.

The first policy (No. 147), for $5,000, and the third policy (No. 151), for $1,000, as they were originally written, did not purport to cover the buildings, but only the stock of dressed and rough lumber, lath, shingles, fence posts, cement, etc. Therefore these policies, when they were written, did not cover these buildings, and it was wholly unnecessary for the agent to indorse any waiver thereon in reference to the ownership of the land. The issuing of these forms including the buildings in

the description of the property insured to be attached to these policies was purely voluntary on the part of the insurance company. It does not appear from the evidence that Dallavo asked for any change in these policies, or that in fact he fully understood the nature of the change that had been made in the description of the property insured. It is certain, however, that the policies at that time were not vulnerable to this defense. To permit the company to assert this defense now, based upon its voluntary action in issuing these forms, would be permitting it to take a wholly unfair and unconscionable advantage of the assured.

If, however, the evidence offered on the part of the plaintiff in error tending to prove actual knowledge of the insurance company itself, should be wholly disregarded, nevertheless the trial court did not err in overruling the motion of the defendant for a directed verdict.

[5] At the time all of these policies of insurance were written Act 128 of the Public Acts of 1911 of the state of Michigan provided, among other things, that—

"No policy of insurance shall be declared void * * * for the breach of any condition of the policy, if the insurer has not been injured by such breach, or where a loss has not occurred during such breach, and by reason of such breach of condition."

This act was repealed May 10, 1917 (Pub. Acts 1917, No. 256), but this repealing act did not go into effect until 90 days after the adjournment of the Legislature May 11, 1917, which would be about August 9th of that year.

It is the claim of the insurance company that, this act having been repealed prior to the loss, it therefore has no application to these policies issued before its repeal. When these contracts of insurance were written, this statute of the state entered into them and formed a part thereof, the same as if it had actually been written into the contract. If these provisions had actually been physically written into the contracts, no claim would be made that they should now be disregarded. That the law and not the pen of the scribe wrote these provisions into these policies of insurance does not affect the construction that must be given them.

In the case of Insurance Co. v. Leslie, 47 Ohio St. 409–417, 24 N. E. 1072, 1074, it was held that a statute in relation to insurance policies "molds the obligation of the contract into conformity with its provisions, and establishes the rule and measure of the insurer's liability." In Hermany et al. v. Insurance Co., 151 Pa. 17, 24 Atl. 1064, it was held that the provisions of the state statute relating to insurance policies cannot be waived by the insurer. In Ritchey v. Insurance Co., 104 Mo. App. 146, 78 S. W. 341, the court held that statutes "relating to fire insurance become a part of a policy of insurance by implication, as if embodied therein, and all stipulations of the policy must yield to the statute." In the case of Union Central Life Ins. Co. v. Pollard, 94 Va. 146, 26 S. E. 421, 36 L. R. A. 271, 64 Am. St. Rep. 715, it was held that—

"A statute which prescribes the scope and effect of contracts of insurance, and determines the duties and obligations of the contracting parties, is

as much a part of such contracts as if incorporated into them. Existing laws enter into and become parts of all contracts made under them, and no waiver of the parties nor stipulations by them can change the law."

See, also, White v. Assurance Society, 163 Mass. 108, 39 N. E. 771, 27 L. R. A. '398.

It necessarily follows that, if this statute entered into these contracts of insurance when written and became a part of them to the full extent as if written therein, the repeal of the statute did not affect the rights of the plaintiffs under the contract, nor can it now affect its construction.

There is no claim here that the loss occurred by reason of such breach of condition. Therefore, under the express terms and provisions of this statute existing at the time the contract was written, and forming a part of the same, the plaintiff is entitled to recover where the insurer has not been injured by such breach or where a loss has not occurred by reason of such breach of condition. Lagden v. Insurance Co., 206 Mich. 341, 172 N. W. 396.

[6] Counsel for the insurance company cross-examined the plaintiff below as to whether or not he had been convicted of a crime in Germany and if he had not escaped from that country without having fully served his sentence for that offense, all of which the plaintiff denied. The defendant thereupon offered as a witness Henrietta Dallavo, a former wife of the plaintiff, to prove that the defendant had falsely testified in his cross-examination in reference to his claimed conviction of an offense in Germany and his subsequent escape. The court excluded her evidence, and this is assigned as error. The matters to which this part of the cross-examination of the plaintiff was directed were purely collateral to the issue in this case. Counsel had the right to ask the witness these questions upon cross-examination solely and only for the purpose of affecting his credibility, but he could not disprove these answers except by the record of conviction, if there is such record; otherwise the jury would be required to determine the preponderance of the evidence in relation to all collateral matters that might be injected into the trial of a suit in this manner, instead of confining its consideration to the real questions in controversy. Jones on Evidence, §§ 839, 840; 1 Greenleaf, Evidence, §§ 375 and 457; Wilbur v. Flood, 16 Mich. 40, 93 Am. Dec. 203; Clemens v. Conrad, 19 Mich. 170; Helwig v. Luscowski, 82 Mich. 619, 46 N. W. 1033, 10 L. R. A. 378; People v. Cutler, 197 Mich. 13, 163 N. W. 493.

For the reasons above stated, the judgment of the District Court is affirmed.