Z. W. MOORE v. THE SUPREME ASSEMBLY OF THE ROYAL SOCIETY OF GOOD FELLOWS.

*Decided March 21, 1906.*

**1.—Benevolent Association—Failure to Pay Assessment—Forfeiture.**

The certificate of membership or policy issued by appellee was conditioned on compliance by the assured with the laws, rules and regulations governing the local lodge or assembly of which he was a member, and was payable upon proof of death, provided the member was in good standing. The laws and rules stipulated that a failure to pay an assessment should work a forfeiture of all benefits. It appearing that at the time of the member's death he stood suspended for failure to pay an assessment within the time required, the appellee was discharged from liability.

**2.—Hearsay Testimony—Harmless Error.**

Hearsay testimony becomes harmless where the same facts are brought out, on cross-examination of another witness, by the party complaining. Any form of secondary evidence, if admitted, may be considered.

**3.—Presumptions.**

Presumptions are not indulged against testimony.

**4.—Estoppel.**

Facts considered and held not to constitute estoppel, or waiver.

Appeal from the District Court of Fayette. Tried below before Hon. L. W. Moore.

*John T. Duncan* and *J. F. Wolters,* for appellant.—The peremptory instruction given by the court was unauthorized by the evidence. Forfeitures are not favored in law, and in order to work a forfeiture of the rights of membership in a mutual association, it must clearly appear that such was the meaning of the contract; and the facts upon which a forfeiture is claimed must be proved by the most satisfactory evidence. Am. & Eng. Ency. of Law, vol. 3, 2d ed., p. 1086 and note 6.

There was no legal evidence introduced upon the trial of the cause to show that any of said assessments were paid after the death of W. T. Moore, and there was no legal evidence introduced showing that W. T. Moore was suspended or had not paid his assessments to the defendant at the time they were due.

As forfeitures most frequently result from nonpayment of dues and assessments, the acceptance of arrears is the most usual way in which

the waiver of forfeitures are effected by estoppel. Am. & Eng. Ency. of Law, vol. 3, 2d ed., p. 1090, and note 1, which collates all the cases. The burden of proof is on the defendant to show that the grounds existed which would authorize the forfeiture of the certificate, and that the forfeiture is being sought according to the terms of the law. If it contends that the member failed to pay his assessment on the day that it was due under a bylaw, but was paid on a day later; and if the bylaw of the defendant order authorized its executive committee to extend the time of payment of the assessment to a later day than that named in the bylaw, then the defendant will be held to show that the terms of the bylaw were not extended. If the defendant fails to make this proof, then the presumption will be indulged in favor of payment, and that it was made in the proper time; especially in view of the fact that the officers, after knowing all of the facts, received the money and appropriated it to the use of the order, and refused or failed to declare a forfeiture on that ground.

The association will be estopped to take advantage of a noncompliance with its rules and bylaws by habitually accepting payment in a different mode and at different dates. Am. & Eng. Ency. of Law, vol. 3, 2d ed., 1102 and note 2.

In suits for rescission and cancellation of contracts the court applies the familiar maxim of equity of almost universal application that: "He who seeks equity must do equity." The plaintiff will not be permitted to repudiate his contract and still retain the benefits which he has derived from it, and his desire and willingness to restore what he has received must appear in the bill or complaint, otherwise he will have no standing in a court of equity. Am. & Eng. Ency. Pleading & Practice, vol. 18, pp. 829, 830.

Insurers may be estopped to deny their obligation by acts or conduct subsequent to loss. See Am. & Eng. Ency. of Law, vol. 11, p. 340. If, after the loss and after the knowledge of forfeiture, the insurer recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act and incur some trouble or expense, the forfeiture is as a matter of law waived. And it is now a settled law that such a waiver need not be based upon any new agreement or any estoppel. Georgia Home Ins. Co. v. Moriarty, 37 S. W. Rep., 632, and cases there cited. The fact that the insurers do not cancel the policy under a provision therefor when knowledge comes to them of its violation is an evidence of an intention to waive such violation. Am. & Eng. Ency. of Law, vol. 11, p. 342, note 3.

A refusal to pay a policy on certain specified grounds will waive other grounds of forfeiture then known to exist. 2 May on Insurance, vol. 2, p. 1164, sec. 502a. German Ins. Co. v. Ward, 90 Ill., 550, 551; Marsten v. Massachusetts Life Ins. Co., 59 N. H., 94; Ben Franklin Fire Ins. Co. v. Flynn, 98 Pa. St., 628.

*Brown & Lane,* for appellee.—That the court did not err in giving a peremptory instruction to find for defendant, cited: Texas Banking Co. v. Hutchins, 53 Texas, 67, 68; Texas Banking Co. v. Stone, 49 Texas, 15; Merchant's Mut. Ins. Co. v. Lacroix, 45 Texas, 170.

That there was no estoppel or waiver. 2 Bacon on Ben. Soc. and

Life Ins., 857, 431, 757; Thompson v. Knickerbocker Ins. Co., 104 U. S., 252; Supreme Lodge Knights of Honor v. Keener, 25 S. W. Rep., 1084; Crossman v. Massachusetts Ben. Assn., 9 N. E. Rep., 753; National Life Ins. Co. v. Manning, 86 S. W. Rep., 618; Bliss on Life Ins., secs. 195, 196, 197; Dickey v. Continental Casualty Co., 13 Texas Ct. Rep., 789; Union Central Ins. Co. v. Chowning, 28 S. W. Rep., 117; Woodmen v. Rothschild, 40 S. W. Rep., 553; Woodmen v. Hicks, 84 S. W. Rep., 426; Dickenson v. Grand Lodge, 28 Atl. Rep., 293; Bagley v. United Workmen, 31 Ill. App., 618; Brown v. Grand Council, 81 Ia., 400; Lantz v. Vermont Life Ins. Co., 139 Pa. St., 546.

JAMES, CHIEF JUSTICE.—W. T. Moore was a member of a local lodge or assembly in appellee's order, which was a mutual fraternal benevolent association without capital stock, its death benefits being raised by means of assessments upon its members.

This was an action upon a benefit certificate or policy on the life of said W. T. Moore for $2,000 issued on February 14, 1902, and payable to appellant Z. W. Moore upon the death of the insured.

The court instructed the jury to return a verdict for the defendant, upon the ground that at the date of his death Moore was under suspension for the failure to pay his assessments, and any payment subsequent to his death did not renew the insurance.

The certificate was conditioned, among other things, on the assured's compliance in the future with the laws, rules and regulations governing the local assembly, or that might thereafter be enacted by the Supreme Assembly to govern said local assembly, and was payable upon satisfactory evidence of the member's death, and upon surrender of the certificate, provided he was in good standing in the society at the time of his death.

It was undisputed that the following bylaws of the order entered into this contract:

"Section 2. Each subordinate assembly shall, upon call of the supreme secretary for assessments, levied in accordance with the provisions of the foregoing section, forward within five days from the date of such call, to the supreme treasurer, all the assessments collected from the members who were admitted to the society prior to the date of such call. If the remittance thereof be not received by the supreme treasurer within fifteen days after the date of such call, the assembly shall stand suspended."

"Section 3. Any assembly suspended for nonpayment of assessments or fines, and failing to reinstate itself by the payment of such assessments and fines within thirty days from the date of suspension, shall become defunct."

"During the period of suspension of an assembly the members thereof shall stand suspended, but any member may within thirty days from the date of suspension of his assembly reinstate himself by making due application therefor and paying to the supreme secretary the amount he is in arrears from all assessments including any assessment paid by him to the financial secretary of such subordinate assembly and not received by the supreme treasurer, also monthly dues fifty cents per each month and he shall thereafter pay to the supreme secretary

all assessments called, together with fifty cents monthly as dues until such time as his assembly shall be reinstated, or until he shall be elected to membership in some other assembly."

"When a subordinate assembly shall become defunct any member thereof in good standing at the date of the suspension not having complied with the provision of the foregoing section shall after a medical examination and approval of the same be reinstated by the supreme secretary within sixty days after the assembly becomes defunct, provided he shall first pay to the supreme secretary the amount of his arrears for all assessments, including all assessments paid by him to the financial secretary and not received by the supreme treasurer, and fifty cents per each month for which his assessments were in arrears."

"Officers of subordinate assemblies, in giving notice of assessments, collecting and forwarding assessments to the supreme treasurer and in performing all other duties required of them under the constitution and laws of the supreme and subordinate assemblies, are and shall be agents for the members of their assemblies and shall not be agents of the supreme assembly."

"All subordinate assemblies shall make remittances direct to the supreme treasurer, and in so doing shall be the agents of their members and shall not be the agents of the supreme assembly."

"Each member shall pay to his subordinate assembly the money due on each assessment call before 11 o'clock p. m. of the last day of the month in which the call is dated; provided, however, that any assembly, on its request, made by a majority vote of its members on one month's previous notice, may be granted for its members until 11 o'clock p. m. on the 15th day of the month following the month of date of each call for the payment of such portion not exceeding three-fifths of the assessments payable on the call, as the executive committee shall specify in its resolution granting the request."

Another bylaw provides: "Any member failing to pay any amount due on an assessment call before 11 o'clock p. m. on the last day of the month shall then stand suspended, and neither he nor his beneficiary shall thereafter be entitled to any benefits from the society while he is so suspended, nor until he shall be duly reinstated, in accordance with bylaw 7."

It was undisputed that assessments Nos. 255 to 264 inclusive were duly levied, and these were all the assessments levied after W. T. Moore became a member. He died November 20, 1902. They were due on the first of the month, but the member had until 11 o'clock of the last day of the month to pay. The assembly was located in San Antonio and he lived in Fayette County where he died. Call No. 261 for the month of August, was not sent in time to be received by the supreme treasurer on September 15 as the bylaws required, but was sent by Scallorn, the financial secretary of the local assembly, so that it reached the supreme treasurer on October 27. Call No. 262—for September—which should have been sent to reach the Supreme Treasurer on October 15, was sent on December 2, did not reach him until December 8, which was after Moore's death. Call No. 263—for October—which should have been received by November 15, was sent on December 13,

and received on December 18. Call No. 264 was for November, the month in which Moore died, was sent and received with No. 263 on December 18.

The receipt returned by the supreme treasurer for the August assessment was unqualified. On December 8, when the September assessment was received it was acknowledged by a letter from the supreme secretary which contained the following:

"In regard to forwarding you a death blank on the death of W. T. Moore, of your assembly, say that, under the existing conditions, according to law 4, section 1, page 25, Constitution and Laws, your assembly suspended itself by nonpayment of Call No. 262 on or before October 15, as per copy enclosed. And when Call No. 263 was not received on November 15, your assembly was recorded as suspended. As the assembly was under suspension at the time of the death of W. T. Moore, we would request that you make affidavit before the clerk of the court of record as to the exact dates on which Call Nos. 262, 263 were paid by him, which evidence will be submitted to the executive committee at its December meeting, and the reinstatement of your assembly will also be considered if Calls Nos. 263, 264 are received on or before December 19. But if not received by this date, action will have to be deferred until the January meeting. Regretting that the delinquency in your assembly has brought about this unpleasant condition, I am,

Yours respectfully,<br>Arthur J. Bates."

The receipt on December 18 of the October and November assessments was acknowledged by the supreme treasurer by postal card, stating that it was duly credited to the lodge subject to investigation by the supreme secretary. Calls 262, 263 and 264 amounted to $22.45 and on March 31, 1904, this amount was returned by appellee by draft to Scallorn. Explaining this delay of over a year in remitting this money the supreme secretary testified in a general way in substance that it was held for the purpose of making an investigation into the merits of plaintiff's claim, that the claim was investigated and after making all the investigation necessary the money was returned to the person who had sent it.

The plea of waiver or estoppel was as follows: "This plaintiff says that the defendant is now estopped from urging as a defense any ground of forfeiture, if any there be or was, which was set up and is set up by it to avoid the payment of the benefit certificate here sued upon, because this plaintiff says that the defendant had knowledge of all the grounds set up by it as grounds of forfeiture in this suit long before the death of W. T. Moore, and after the death of W. T. Moore, and that it has waived all of said forfeitures and should not now be permitted, after having waived all of said forfeitures, to set them up as a defense in this suit. Further plaintiff says that after the death of W. T. Moore, to wit: On or about December 8, 1902, that the defendant at that time, had knowledge of all the grounds that it now sets up as a defense to plaintiff's action and the only defense, or only reason it assigned at the time was, that the local lodge of which the deceased,

W. T. Moore, was a member, had been suspended, or was under suspension at the time of the death of the said W. T. Moore, and this being the only reason, expressed or given by the defendant at that time as to why the benefit certificate sued upon would not be paid, it, in law, waived all other grounds known to have existed at that time. And further this plaintiff says that the defendant, by its acts since the death of W. T. Moore has waived all rights to now urge a forfeiture of the benefit certificate sued on, and that it is in no position to ask a forfeiture at the hands of this court."

Appellee insists, first, that the evidence conclusively showed that the assembly was suspended and remained suspended by reason of the said assessments being remitted too late, and for that reason the peremptory instruction was correct; and, second, that the above plea of waiver or estoppel was of no effect, because it was too general, did not state the facts upon which the waiver or estoppel was based, and was insufficient to make such issue, citing Texas Banking Co. v. Hutchins, 53 Texas, 67, 68; Texas Banking Co. v. Stone, 49 Texas, 15, and Merchant's Mut. Ins. Co. v. Lacroix, 45 Texas, 170. We think on this subject, that the matter was pleaded, and though not with the particularity required by the rules of pleading it was sufficient in the absence of special exception to enable plaintiff to avail himself of proof that sustained it.

Appellee has labored to impress upon us that under the undisputed testimony the local assembly had at the time of Moore's death suspended itself by force of the laws of the order for failure to make remittances in time, and that nothing was done by the supreme officers, and no course of dealing had grown up in respect to remittances, such as would warrant any finding of waiver, or estoppel to claim such suspension. We do not deem it necessary to go into this subject, for the reason that we think it conclusively appears, irrespective of the question of suspension of the local lodge, that the member Moore himself was at the time of his death suspended by force of the bylaws in that he had failed to pay within the time required the September assessment, and therefore was not in good standing when he died. Furthermore that nothing that defendant's officers did after his death estopped it from claiming such suspension.

Appellant insists that there was no legal evidence that Moore paid the September call too late. In reply to the letter of the supreme secretary, dated December 8, above set out, Scallorn wrote a letter dated the 13th stating among other things that Moore paid calls Nos. 262 and 263 (for September and October) on the 1st day of October. This letter it is insisted was inadmissible because hearsay, not the best evidence, incompetent to prove any fact against this plaintiff and was an indirect method of allowing Scallorn to testify without placing him on the stand. These objections we need not discuss, because plaintiff's counsel themselves in cross examining the supreme secretary, who testified in person, drew out from him the fact that Scallorn had sent an affidavit in which he stated that the money had been paid on the 1st day of October. Also the fact that Scallorn wrote the letter and what it stated. Under these circumstances the objections by appellant to the introduction of the evidence can not be sustained, and all we may consider would be its competency or sufficiency as any evidence at all

of the fact that he made the payment on October 1. Hearsay or any form of secondary evidence, if admitted, may be considered. (Western U. Tel. Co. v. Brown, 75 S. W. Rep., 359; Meyer v. Christopher, 75 S. W. Rep., 750.)

It is insisted by appellant that inasmuch as by one of defendant's bylaws it is provided that its executive committee can, upon request of the local assembly and by a proper order, extend the time of payment of assessments for fifteen days, it devolved upon defendant in claiming a suspension or forfeiture, to show affirmatively that such an extension had not been ordered, because if the extension had been granted, there was no default on the part of Moore in respect to the September call. We do not have to pass upon the merits of this contention, for the reason that presumptions are not indulged against testimony, and there was testimony which indicated that no such order was in effect. The letter of the supreme secretary to the local secretary (above copied) asserts in effect that the calls should have been received by the supreme treasurer on the 15th of the month. This could not have been the case if members had until the 15th to pay.

The September assessment was not paid by 11 o'clock of the last day of that month and Moore, according to his contract of insurance, was *ipso facto* suspended. The local assembly was the agent of Moore, not of defendant. This assessment was sent on after Moore's death and reached the supreme treasurer on December 8. On that day the supreme secretary was notified by letter from the local secretary that Moore had died on the 20th day of November. The remittance of the September assessment and the notification of Moore's death appeared to have been received at the same time. But at that time the fact of Moore's delinquency and his consequent suspension was not known to the supreme officers. That notification came in response to the letter of the supreme secretary dated December 8, which was written for the purpose among others of ascertaining the facts. That letter also claimed that the assembly itself was under suspension for failure to return assessment within the prescribed time, and stated that if the calls 263 and 264 should be sent in by December 19, the matter of the reinstatement of the lodge would be considered at the December meeting of the executive committee, otherwise this matter would be deferred to the January meeting. These calls 263 and 264 came in on the 18th of December.

It is clear that when Moore died he was suspended by force of the laws which were a part of his contract, and was not in good standing. There was no evidence in the case of any conduct on the part of defendant which Moore could be said to have known and acted upon, which was calculated to assure him that compliance with the bylaws in respect to timely payments of assessments was not essential. Under these circumstances when he died, defendant was not liable on the certificate.

Defendant did not receive the September assessment nor did it call for the remittance of his subsequent assessments with knowledge that Moore had been in default in any of them, if such acts *after the death of the insured* could be permitted to have the effect of reviving the contract. The fact that defendant did not promptly upon learning

the facts which exonerated it from liability, return the money, or that it retained the money, did not have the effect of renewing or reinstating the contract which was at an end, and upon which it was not liable, when the death of the member occurred. (Smith v. Sovereign Camp, 77 S. W. Rep., 667.)

For these reasons, and upon these facts, we think the verdict was properly directed.

*Affirmed.*

Writ of error refused.