### GREAT SOUTHERN LIFE INSURANCE COMPANY V. MRS. RUBY B. WESTER ET VIR.

No. 6522.   Decided March 25, 1936.
Rehearing overruled April 29, 1936.
(92 S. W., 2d Series, 238.)

*Vinson, Elkins, Sweeton & Weems* and *Fred R. Switzer,* all of Houston, for appellant.

Subdivisions 8 and 9 of Article 4732 do not confer any rights on the insured in this case, neither do they apply here for the reason that there was only one, the first, premium paid upon the policy, and subdivisions 8 and 9 of Article 4732 apply only "after premiums shall have been paid for three full years." Gilley v. Missouri State Life Ins. Co., 116 Texas, 43, 285 S. W., 807; Great So. Life Ins. Co. v. Cherry, 24 S. W. (2d) 512; Bills v. Hibernia Ins. Co., 87 Texas, 551; Home Benefit Assn. v. Brown, 16 S. W. (2d) 834.

*Marvin Roberson,* of Fort Worth, for appellee.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

The certificate of the Honorable Court of Civil Appeals could not well be condensed and is therefore set out in full. It is as follows:

"Mrs. Ruby B. Wester, the designated beneficiary, joined by her husband, filed this suit on an insurance policy issued upon the life of their son, Berton Errett Wester, dated April 28, 1929.

"The policy provided for the payment of $1000 in the event of the insured's death from natural causes. By a supplemental contract attached to the policy, it also provided for double indemnity in the event the death of the insured was due to accidental means.

"The first annual premium of $23.79 was paid on April 28, 1929. The insured died on June 29, 1930, from accidental drowning, without the payment of further premiums.

"The appellant company defended on the ground that the policy had lapsed because, as therein provided, of a default in the payment of the required premium.

"The cause was tried before the court without a jury on May 11, 1932, and resulted in a judgment for the plaintiffs against the appellant insurance company for $2000, with interest thereon at the rate of 6% per annum, together with the further sum of $240 as a statutory penalty and $300 as attorney's fees. From such judgment an appeal has been duly prosecuted to this court.

"The policy contained the following further pertinent provisions, to wit:

" '1. AUTOMATIC PREMIUM LOANS—This policy shall not lapse for non-payment of premiums after two full annual premiums shall have been paid hereon if the cash value of the policy is in excess of all indebtedness against it, but shall be continued in force by the Company advancing a loan against the policy as herein provided. In the event of non-payment of premium after two full annual premiums shall have been paid, the Company will advance a loan against the policy to pay the premium in default if the cash value of the policy is sufficient to pay such premium and all other indebtedness together with interest in advance at the rate of six per cent per annum on the total debt until the next premium due date. The advance shall always be made for an annual premium if the cash value of the policy is sufficient to secure such premium and all other indebtedness; but, when the cash value is not sufficient to secure

an annual premium, the advance shall be made for a semi-annual, or quarterly premium, whichever may be paid out of the then cash value of the policy. If the value be less than sufficient to secure a quarterly premium and all other indebtedness, the advance shall be for the then full cash value of the policy and shall continue the insurance in force for such a fractional part of ninety days as the amount of the cash value after deducting all indebtedness and interest will pay on a quarterly premium basis, and at the expiration of the said period the policy and all benefits therein shall cease and terminate.

"2. CASH LOANS—At any time after the payment of premiums for two full years and while this policy is in full force, the insurer can borrow from the company upon the sole security of this policy and proper assignment thereof any amount within the loan value stated in the 'table of loan and surrender values' opposite the year for which the premium has been paid, subject to the deduction of all existing indebtedness to the Company on this policy.'

"The policy with reference to the payment of premiums provides:

"'1. CONDITIONS REGARDING PAYMENT OF PREMIUMS—All premiums are payable in advance at the Home Office of the Company at Fort Worth, Texas, or to an authorized agent of the Company upon delivery of a receipt signed by the President or Secretary and countersigned by the authorized agent. Premiums may be paid annually, semi-annually or quarterly, but should the insured not survive to complete premium payments for the current policy year, the amount necessary for such completion shall be considered an indebtedness hereon to the Company.

"The Annual premium is $23.79, Semi-Annual Premium is $12.37, Quarterly Premium is $6.30.

"If any premium or any premium note is not paid on the date when due the policy shall be null and void from such date and the insurance hereunder cease except as otherwise provided herein.

"2. PERIOD OF GRACE—In the payment of premiums under this policy, except the first, a grace of one month will be allowed without interest charge, but if death occurs during said month of grace the unpaid premium shall be deducted from the amount payable under this policy.

"3. FIRST YEAR VALUE—The cash or loan value shown in the 'table of loan and surrender values' is available only to-

ward payment of the second year's premium when the balance of the said year's premium is paid in cash and then only when applied for in accordance with the requirements set out in provision 2 above, entitled 'Cash Loans.'

"4. VALUES NOT SHOWN IN TABLE—The values in the table are for complete policy years but due allowance will be made for the payment of semi-annual or quarterly premiums beyond a policy year. No increase in value will be allowed for any payment less than a quarterly premium. Values after the twentieth year will be equal to the entire reserve.

"Table of LOAN AND SURRENDER VALUES:

| Years premium paid | Cash or loan value | Paid-up Life Policy | Extended Years | Term Ins. Months |
|---|---|---|---|---|
| 1 | $ 5 | None | 0 | 0 |
| 2 | 8 | $ 31 | 0 | 11 |
| 3 | 23 | 82 | 2 | 9 |
| 4 | 38 | 132 | 4 | 10 |
| 5 | 54 | 185 | 6 | 10 ' " |

"It was admitted on the submission of the cause before us that if under the terms of the policy its cash or loan value was available for the purpose, then such value, if automatically applied to an extension of the policy from the expiration of the month of grace, would continue it in force until a date beyond the death of the insured.

"The members of this court are not in agreement upon the proper disposition of the question involved, and we accordingly certify to your Honors for determination the following question:

"1. Under the facts stated, the terms of the policy, and of article 4732, including subsections 8 and 9, Rev. Statutes of 1925, or other laws, was the company required to automatically apply said loan value of $5.00 in extension of the policy declared upon? In other words, did the trial court correctly hold that the policy sued on was in force upon the date of the insured's death?

■ Before setting out the statutes referred to, we consider whether, by the terms of the policy copied in the certificate, the insurance company was required automatically to apply the loan value of $5.00 in extension of the policy. As we understand the brief's filed in behalf of defendants in error, it is claimed that there is a conflict between Provisions 3 above, entitled "First Year Value," and Provision 2 above, entitled

"Cash Loans," creating an ambiguity in these sections as to how and when the $5.00 first year cash or loan value shall be applied, and, because of this ambiguity, the policy should be construed as if it provided that the $5.00 belonged to the insured. Wherefore, it is reasoned, this amount should have been applied in extension of the policy. Without determining whether the existence of an ambiguity between these provisions would lead to the conclusion contended for, it is our view that no character of conflict exists, and, therefore, no ambiguity. The section entitled "First Year Value" in very clear and unambiguous language provides that this cash or loan value is available for one purpose only, and that is toward the payment of the second year's premium, and is available for that purpose only "when the balance of the said year's premium is paid in cash." As a further limitation upon the availability of this cash or loan value, it is provided that it is available for that purpose "only when applied for in accordance with the requirements set out in Provision 2 above, entitled 'Cash Loans.' " The section entitled "Cash Loans" in equally clear language provides that, after the payment of premiums for two full years and while the policy is in full force, the insured can borrow from the company any amount within the loan value. The requirements set out in that section is that the policy be assigned as security for the loan. The two sections are dealing with different rights, one with rights at the end of the first year and the other with rights after the payment of premiums for two years. In the former, the cash loan value is available only as a payment on the second year's premium, when the balance thereof is paid in cash. In the latter the cash or loan value is available as a loan after premiums for two full years are paid. But the requirement that the policy be assigned as security applies to both. The insured could have made the $5.00 available as a payment on the second year's premium, but he did not do so. There is no provision of the policy requiring the Insurance Company automatically to make such application.

■ Nor do the statutes impose that duty. Article 4732 requires that all policies of life insurance issued or delivered in this State shall contain, among others, the following provisions:

"8. A table showing in figures the loan values, and the options available under the policies each year, upon default in premium payments during the first twenty years of the policy or the period during which premiums are payable, beginning with the year in which such values and options become available.

"9. That if, in event of default in premium payments, the value of the policy shall be applied to the purchase of other insurances; and if such insurance shall be in force and the original policy shall not have been surrendered to the company and canceled, the policy may be reinstated within three years from such default upon evidence of insurability satisfactory to the company and payments of arrears of premiums with interest."

It is obvious that Section 8 does not define the options available upon default in premium payments, but merely provides that the policy contain a table showing the loan values and options, beginning with the year in which such values and options become available.

Section 9 does not provide that, in event of default in premium payments, the value of the policy shall be applied as a payment on premiums or to the purchase of other insurance. It merely provides that, if the value is applied to the purchase of other insurance, and if such insurance shall be in force, certain rights are available. No duty to apply the cash or loan value at the end of the first year in extension of the policy is there prescribed.

Both questions are answered "No."

Opinion adopted by the Supreme Court March 25, 1936.

Rehearing overruled April 29, 1936.