## STATE RESERVE LIFE INS. CO. v. CARTER.

### No. 1677.

Court of Civil Appeals of Texas. Waco.
Oct. 21, 1937.

Rehearing Denied Nov. 11, 1937.

Robt. Harrison, of Fort Worth, for appellant.

Nat Harris and Mabel Grey Howell, both of Waco, and Vernon Goodall, of San Antonio, for appellee.

ALEXANDER, Justice.

This suit was brought by Mrs. Carter against State Reserve Life Insurance Company to recover on a life insurance policy in the sum of $2,500, issued on the life of plaintiff's deceased husband, M. O. Carter. The case was submitted to the court on an agreed statement of facts and judgment was rendered for the plaintiff. The defendant appealed.

The policy in question was issued and delivered on October 1, 1931. It provided for the payment of a premium of $92.90 annually in advance but permitted the insured to elect to pay the premiums quarterly. The premium for the first year was paid when the policy was delivered. The insured died November 26, 1932, without ever having paid any further or additional premiums on the policy. The insurance company defended on the ground that the policy had lapsed for failure to pay the second annual premium. It is appellee's contention that the policy was extended and kept in force by virtue of the automatic loan provisions thereof. Page 3 of the policy contained the following provisions:

"Table of Loan and Non-Forfeiture Values

"The amounts shown in this table are available according to the provision on second page, provided there is no indebtedness on account of this policy.

"Subject to the terms and conditions of provision for 'Cash Loans' on page 2, a loan value of $40.00 will be available at the end of the first policy year, and a loan value of $82.00 will be available at the end of the second policy year; provided, either loan shall be applied toward payment of the succeeding annual premium."

Following the above provisions was a table of loan values showing the amount that would be available each year after the payment of the annual premium for three years, but it did not contain any item showing the amount that would be available during the first or second year. Page 2 contained the following provisions:

"Cash Loans

"After the expiration of the second policy year, and while this policy is in force, the legal owner may borrow upon this policy,

by assigning and depositing it as collateral according to the company's form, all or part of its loan value as shown in Table on page 3, provided that all indebtedness and the premium up to and including the end of the policy year in which loan is made, and interest for the same period at the rate of 6% per annum, are paid in advance."

It is conceded that the insured never requested the insurance company to make a loan on the policy for the purpose of paying the premiums or for any other purpose. In fact, the record discloses that on October 23, 1932, after the second annual premium had accrued, the insured wrote the insurance company that he desired to drop the policy. The insurance company replied, urging him to pay the premium and keep the policy in force, but no further communication was had from him with reference to said policy.

 It is the contention of appellee that there is a conflict between the above provisions taken from page 2 of the policy and those taken from page 3 thereof, in that the stipulation for "Cash Loans," as found on page 2, provides for loans only after the expiration of the second policy year, whereas page 3 provides for a loan of $40 at the end of the first policy year. From this it is contended that, in keeping with the general rule that doubtful provisions of insurance policies must be construed most favorably to the insured, we should ignore the restrictive provisions with reference to the steps necessary to secure a loan, as set out on page 2 of the policy under the heading "Cash Loans," and hold that, without any compliance with said restrictive provisions by the insured and without any request from him, the insurance company was automatically required to make a loan of $40 at the end of the first policy year and apply same to the payment of the quarterly premium for the purpose of preventing a lapsation of the policy. We cannot agree with this contention. The only material difference between the two provisions is that one of them provided for a loan at the end of the first year and the other did not. Resolving this doubt in favor of the insured, we hold that he was entitled to the loan of $40 at the end of the first policy year, but such loan was available to him only upon compliance with the conditions stipulated in the very language creating the right; that is, that the right was subject to the terms and conditions of the provisions for "Cash Loans" on page 2 of the policy, which

required him to assign and deposit the policy as collateral to secure the loan and to pay the interest on the loan in advance. He did not comply with these provisions and therefore was not entitled to the loan. State Reserve Life Insurance Co. v. Hill (Tex. Civ.App.) 93 S.W.(2d) 485.

 In the absence of express provisions therefor, the insurance company was not required to make the insured a loan and automatically apply the proceeds thereof to a continuance of the policy in the absence of a request from him. Dillehay v. Texas Life Insurance Co. (Tex.Com.App.) 107 S.W.(2d) 369; Great Southern Life Insurance Co. v. Wester, 127 Tex. 274, 92 S.W. (2d) 238.

 Since the insured did not pay any part of the second annual premium and was not entitled to have the loan value of the policy applied toward the payment of the same, the policy lapsed because of the failure to pay the premiums as provided for therein.

The judgment of the trial court is reversed and judgment is here rendered in favor of the defendant.