## AMERICAN NATIONAL INSURANCE COMPANY V. MRS. BILLIE GRIFFIN INGLE.

No. 7616. Decided April 30, 1941.
Rehearing overruled July 9, 1941.
(152 S. W., 2d Series, 1098.)

*W. B. Handley,* of Dallas, for plaintiff in error.

The Court of Civil Appeals erred in overruling plaintiff in errors assignment which set forth that the judgment was contrary to law in that the policy contract was clear and unambiguous in its provisions and conditions, and that a provision for extended insurance should not be read into the policy. Manhattan Life Ins. Co. v. Wilson Motor Co., 75 S. W. (2d) 721; Great Southern Life Ins. Co. v. Cunningham, 97 S. W. (2d) 692; State Reserve Life Ins. Co. v. Hill, 93 S. W. (2d) 485.

*W. J. Rutledge, Jr.,* of Dallas, for defendant in error.

The record shows that the parties have placed upon the policy contract a construction under which the balance in the hands of the company representing the reserve value under the policy has been applied to the payment of · premiums which kept the policy in force as a valid contract to, and beyond, the date of insured's death. Therefore the contract of insurance was in full force and effect at the time of the death of the insured. Equitable Life Ass. Soc. v. Ellis, 105 Texas 526, 147 S. W. 1152; American Natl. Ins. Co. v. Tabor, 111 Texas 155, 230 S. W. 397.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

Mrs. Billie Griffin Ingle, as plaintiff, instituted this suit in the District Court of Dallas County against the American National Insurance Company, as defendant. The parties will be designated as in the trial court.

Plaintiff is the surviving wife of Andrew J. Ingle, who died August 24, 1935. Prior to his death Andrew J. Ingle held a life insurance policy issued by defendant and had paid three full years premium. Under the policy he became entitled to claim benefit of the nonforfeiture provisions of the contract. Under these provisions he could take the cash surrender value as shown by the table of Guaranteed Values. This he did not do. The other provision was as follows:

"Paid-Up Insurance.

"If the Cash Value is not selected this policy shall be automatically continued as Non-Participating Paid-Up Endowment Insurance payable in a single sum at the same time and under the same conditions as this policy, except as to premium payments, for the amount as shown in the 'Table of Guaranteed Values.' But any indebtedness on the policy will reduce the amount of Paid-Up Insurance in such proportion as the indebtedness bears to the Cash Value at the due date of the premium defaulted."

The policy contained loan provisions which will hereinafter be more fully noted.

It is undisputed that in October, 1934, Ingle was by force of circumstances required to make application to the Company for a loan to pay the semi-annual premium due November 15, 1934. Such application was made upon a regular form furnished by the Company, and the sum of $20.59 was advanced, which paid the premium to May 15, 1935. At the time of the loan the reserve value of the policy was about $34.00, and after deducting the loan approximately $14.00 of the reserve was left. On May 15, 1935, Ingle was still unable to pay premiums. He apparently took no action indicating an election to claim any specific option under the policy, and died August, 24, 1935.

The defendant Company admitted liability in the amount of $37.00. This was based on application of the paid-up-insurance provision of the policy set out above. Its contention was and is that as the insured failed to accept the cash surrender value of the policy within thirty-one days after default in payment of the premium, towit, May 15, 1935, the policy automatically continued as non-participating paid-up-endowment insurance in the sum of $37.00. It seems to be conceded that if this provision of the policy governs that sum would constitute the amount of such paid-up insurance.

The trial court rendered judgment in favor of plaintiff for the full amount of the policy, together with interest, statutory penalties and attorney's fees. This judgment was affirmed by the Court of Civil Appeals. 129 S. W. (2d) 426.

The Court of Civil Appeals held, among other things, that the provision in the contract which gave the Company the right, in the event the insured failed to accept the cash surrender value within thirty-one days after default, to continue the policy as non-participating paid-up-endowment insurance, was in derogation of Article 4373 of the Revised Statutes of 1925 and was void. Judge Bond dissented upon this point, and because of this holding the Supreme Court granted the writ of error.

1  It is now definitely settled that a provision which automatically secures to the insured "paid-up insurance" is not in contravention of the statute and is not void. American Nat'l Ins. Co. v. Foster, 133 Texas 588, 130 S. W. (2d) 787, and authorities cited.

It also seems to be settled that in absence of a specific provision in the policy to that effect, an insurance company is not required to automatically apply a reserve to extended insurance. Great Southern Life Ins. Co. v. Wester, 127 Texas 274, 92 S. W. (2d) 238; Dillehay v. Texas Life Ins. Co., 130 Texas 197, 107 S. W. (2d) 369; State Reserve Life Ins. Co. v. Carter, 109 S. W. (2d) 781. However, we know of no law which prevents an insurance company, in the application of doubtful provisions of a contract, from applying the reserve to extended insurance, when to do so does not injuriously impair the rights of the insured or beneficiary. The policy in this in-

stance, under the head of "Loan Provisions," contained the following:

"After three full years premiums have been paid hereon, and no nonforfeiture value has been taken, if requested by the Insured in the application for this policy, or upon written request by the Insured and any assignee subject to revocation at any time, the Company will pay by loan against the policy, any premium unpaid at the end of its Grace Period, or other indebtedness when past due, provided the Loan Value shown in the Table of Guaranteed Values at the end of the current policy year is sufficient to pay the premium then due, with interest in advance for the current premium payment period at the rate of six per cent (6%) per annum, and all outstanding indebtedness and interest thereon. Such loans shall be a first lien on the policy in any settlement thereunder. *If at any time such Loan Value shall not be sufficient to pay the entire premium and all outstanding indebtedness with interest thereon, the available Loan Value (or the balance thereof) shall be applied to continue the policy in force as long as it will suffice to pay for even one day's premium and interest.*" (Emphasis ours.)

**2** It is the contention of plaintiff that in pursuance of the latter part of this provision the Company, after the default of May 15, 1935, actually used the reserve to pay premiums for extension of the insurance, instead of invoking the paid-up-insurance clause; and after the death of Ingle should not be permitted to invoke that provision. Defendant asserts that it was not authorized to use the balance of the reserve for the purpose of extended insurance without the written request of the insured; and that Ingle made no such request on or about May 15, 1935, nor thereafter. There was no such request in the application for the policy.

There is some doubt as to the true meaning of the latter portion of the provision quoted above. Under a liberal rule of construction it might reasonably be said that this means that if on any premium payment date the loan value is not sufficient to pay all indebtedness and the "entire premium," if default occurs, the amount available shall *automatically* be applied to extended insurance, even if only sufficient to extend the policy for one day. This means to be in accord with the designation of the provision as *"Automatic* Loans to Pay

Premiums." We think, however, that it is entirely reasonable to give to the whole provision the following interpretation: That when once an application has been formally made for a loan, and same is allowed, then, unless on or before the next premium payment date the Company is notified of changed conditions, and that no further loan is wanted, the Company, in event of default, may treat the former application as a continuing one and apply the balance of reserve to extended insurance. In this particular instance, we think this is exactly what was done.

**3** It is undisputed that application was made in October, 1934, for a loan to pay the premium due November 15, 1934. The loan was made and the policy was extended thereby to May 15, 1935. The loan was not paid, and on the date last mentioned the loan value of the policy, after deducting indebtedness, was sufficient to pay monthly premiums for several months. Plaintiff introduced in evidence a letter dated July 27, 1935, written on the letterhead of the defendant Company. It was addressed to A. J. Ingle at Dallas and bore his policy number. In addition to other things, it contained the following statement: "Let nothing stand in the way of reinstatement of your policy, *which is now being carried on extended insurance,* in accordance with its terms." (Emphasis ours.)

After statement as to the total amount of premiums due, the letter had the following postscript: "Surrender value applied in liquidation of outstanding loan indebtedness, and policy will expire 2-5-37."

This letter was signed "F. E. Fischer, Supervisor Conservation Renewal Department."

Defendant objected to the introduction of this letter in evidence on the ground that it purported to change the terms of the policy, and it was not shown that Fischer had authority to bind the Company. It is not disputed that Fischer was an employee of defendant Company and the letter was admittedly written by him. Defendant in his answer alleged that it was written by Fischer through mistake on his part. It is not disputed that Fischer held the position of Supervisor Conservation Renewal Department. While it is claimed that the relation which Fischer sustained to the Company was estab-

lished by hearsay testimony only, yet the statement of a witness to the effect, "that is the renewal department, department designed to keep policies in force, keep policies sustained," does not appear as hearsay testimony, but appears as a statement of a known fact. If the matter involved a change in the contract provision, there might be some force to the contention that the authority of Fischer to bind the Company was not sufficiently shown. However, we do not think this is an attempt to vary or change the terms of the contract. On the contrary, we think the letter is admissible as an evidentiary matter, tending to show just how the Company itself handled this transaction. The letter of Fischer manifestly reflected entries contained in the records of the Company made by those authorized to make them. Fischer certainly, by virtue of his position, had authority to state what the records of the office disclosed. We think the letter not only admissible but that it furnished evidence to show how the Company had interpreted the loan provisions of the contract. See Underwood v. Security Life & Annuity Co., 108 Texas 381, 194 S. W. 585; Equitable Life Assurance Soc. v. Ellis, 105 Texas, 526, 147 S. W. 1152, 152 S. W. 625. This evidence was sufficient to sustain a finding that the Company considered the application for loan made in October a sufficient request to continue payment of the reserve, after default in May, to extended insurance. It appears with reasonable certainty that this was done. As the insured obviously relied upon the information contained in this letter, we do not think defendant should be heard to say that its action was not authorized by the contract. The paid-up-insurance provision of the policy did not prevent it from giving to the automatic loan provisions the practical construction which it did.

For the reasons stated herein, the judgment of the Court of Civil Appeals affirming the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court April 30, 1941.

Rehearing overruled July 9, 1941.