## PARDEE v. UNIVERSAL LIFE INS. CO.
### No. 2520.

Court of Civil Appeals of Texas. Waco.

April 15, 1943.

Richard & A. P. Mays, of Corsicana, for appellant.

W. S. Campbell and O. D. Montgomery, both of Dallas, for appellee.

RICE, Chief Justice.

This suit was instituted by appellant, Robert T. Pardee, against appellee, Universal Life Insurance Company, seeking recovery on a life insurance policy issued by the latter, wherein appellant's mother, Laura H. Pardee, was the insured and appellant the beneficiary. The policy provided for the payment to the beneficiary of the sum of $150, on the death of the insured, in consideration of the payment of weekly premiums of twenty-five cents. The insured died September 8, 1941. When proof of death was made, appellee tendered to appellant in full of its liability under the terms of the policy, the sum of $40, representing the amount of paid-up insurance in accordance with the table of values shown by the policy at the date it was assertedly permitted to lapse by reason of the failure to pay the stipulated weekly premiums.

Appellant takes the position that the policy did not lapse but was in full force and effect when his mother died, because, he says, he delivered to appellee on July 28, 1941, his personal check which was to apply in part to the payment of all premiums payable on said policy from July 14, 1941, through September 6, 1941; that said check was accepted unconditionally by appellee, a receipt for the premiums was issued, the premiums were therefore paid up to and inclusive of September 6, 1941; that appellee waived payment in cash and is estopped from claiming a lapse of the policy because of failure to pay premiums. Appellant further pleaded that at the time he delivered his check to appellee the latter agreed to hold it and present it for payment on or about September 1, 1941; that the check was inadvertently drawn on the State National Bank of Corsicana, Texas, when it was the intention of the parties to draw it on the First National Bank of Corsicana, where appellant had sufficient funds to pay the check when presented as agreed upon; that when appellant learned that the check was erroneously presented to the State National Bank and payment was refused, he mailed to appellee a postal money order in the amount of the check, which was by it received, accepted and retained by it in discharge of said obligation. Among other defenses, appellee pleaded that its agent had no authority to accept a check in payment of premiums; denied that the check was accepted unconditionally; denied the issuance of a receipt evidencing the payment of the premiums in question; denied that plaintiff delivered his check in good faith; and alleged that plaintiff gave the check with full knowledge that he had no bank account, and with the intention to defraud appellee.

In response to special issues the jury found: (1) that appellant executed and delivered his check in question to an agent of appellee with the intention that same would not be paid; (2) that the agent of appellee accepted appellant's check in payment of the premiums on the policy; (3) that the name N. D. Wilson on the two premium receipts in question, and the initials N. D. W. on the check in question, were not the genuine signatures and initials of the said N. D. Wilson.

The trial court rendered judgment denying appellant the recovery he sought, from which appellant has appealed.

Appellant urges that the trial court erred in rendering judgment for appellee because, he says, appellant pleaded, the evidence showed, and the jury found, that appellee accepted appellant's check in payment of the premiums due on the policy in question; that the action of the trial court in rendering judgment for appellee was unauthorized, being non obstante veredicto of said finding of the jury. Appellant further urges that the judgment of the court is based alone on the finding of the jury that appellant executed and delivered the check in bad faith, which finding he says is against the overwhelming preponderance of the testimony.

■ We overrule this contention. Viewing the record most favorably from the standpoint of appellee, as we must, in view of appellant's contention that the evidence does not sustain the finding of the jury that appellant did not act in good faith in delivering his check to appellee, we find that appellant testified, in substance, that about July 28, 1941, he delivered to appellee's agent his check for the sum of $8, dated July 28, 1941, payable to the order of appellee and drawn on the State National Bank of Corsicana, Texas, in payment of premiums. He testified that he inadvertently drew the check on the State National Bank when he intended to draw it on the First National Bank, but he did not charge appellee's agent with knowledge of his intention. Two dollars of the proceeds of this check were to be applied to the payment of the premiums on his mother's policy. This amount, if it had been paid, would have kept the policy in force up to the date of his mother's death. He further testified that the appellee, acting through its agent, unconditionally accepted the check in payment of the premiums on his mother's policy and his own,

and gave him a receipt for the payments made on the premiums although he informed the agent at the time that he did not then have the money in the bank but would have it in "the First National Bank on or about September 1, 1941—within thirty days." He further testified that appellee's agent agreed to hold the check. He admitted that he had no money in the State National Bank at any time during the year 1941; that he had no money in the First National Bank until September 11, 1941, when he deposited the sum of $100, three days after his mother's death; that he never paid the $8 check during his mother's lifetime; that he let the check go from July 28, 1941, until September 8th following without doing anything about it; that when he was notified the check was not paid he sent a postal money order to appellee on October 17th for the amount. He further testified that appellee had never delivered to him his check or the money order. His counsel asked him when he first learned that the check had not been presented to him for payment but had been sent to the State National Bank, where payment was refused, and he answered he thought it was September 1st; that it was before his mother died. He then changed his testimony and said that the foregoing matters occurred after his mother's death.

It is undisputed that the appellee received appellant's check for $8 at its Dallas, Texas, office and deposited it for collection on July 30, 1941; that the check was returned unpaid and had been in appellee's possession ever since. The district manager testified that when the check came back dishonored he did not notify appellant of that fact but gave the check to the agent to be delivered to appellant and later the agent returned it to appellee's cashier; that in October appellee received from appellant the postal money order dated October 17, 1941, for $8; that the money order was not cashed and was not tendered back to appellant but was in appellee's possession at the time of the trial. Appellee delivered to appellant its check for the sum of $40 to cover the amount of paid-up insurance due under the terms of the policy but appellant did not cash this check.

■ The court overruled appellee's motion for judgment non obstante veredicto, and thereupon rendered judgment for appellee upon the findings of the jury. In our opinion, the judgment of the trial

court finds support in the finding of the jury that appellant executed and delivered the check to appellee with the intention that the check would not be paid. This finding is supported by the evidence and, in our opinion, controls the disposition of this cause. The remaining findings of the jury are not in conflict with this finding but are consistent therewith.

█ It is true, as contended by appellant, the rule in Texas is that payment of premiums may be made by check when the policy or contract of insurance does not provide otherwise, and if the insurer accepts a check in payment of a premium, the transaction constitutes payment even though the check may be dishonored for payment on presentation. 24 T.J. 859, par. 136; State Life Insurance Co. of Indiana v. Little, Tex.Civ.App., 264 S.W. 319, writ refused; State Life Ins. Co. of Indianapolis v. Nolen, Tex.Civ.App., 13 S.W.2d 406; Commonwealth Casualty & Ins. Co. v. White, Tex.Civ.App., 142 S.W.2d 633; State Mutual Life Ins. Co. v. Rosenberry, Tex.Com.App., 213 S.W. 242; Lowry v. Aetna Life Ins. Co., Tex.Civ.App., 120 S.W.2d 505; Modern Woodmen of America v. Harper, Tex.Civ.App., 57 S.W.2d 863. Each of the foregoing authorities is cited and relied on by appellant in support of the general rule above set forth. We have carefully read these authorities and none of them hold that a check executed by the maker with the undisclosed and secret intention that it will never be paid, and delivered to, and unconditionally accepted by, the insurer in payment of premiums, will constitute payment when the check is dishonored on presentation; in fact, several of the cited authorities indicate to the contrary. In the case of State Life Ins. Co. of Indiana v. Little, supra, the court said: "It was shown that when the check was issued Little had sufficient funds in the drawee bank to meet it, and we cannot presume that he issued it fraudulently. Its issuance and transmission under the circumstances disclosed by this record, evidences a bona fide intent on his part to pay the premium." (264 S.W. page 321, pars. 1 to 3). In the case of State Life Ins. Co. of Indianapolis v. Nolen, supra, the court found that the insured's bank account, in evidence, showed deposits at date of check and before exceeding the amount of the check, and that if the check had been promptly forwarded for collection it would have been paid.

In discussing the fact that the check in question was not paid on presentation, the court significantly said [13 S.W.2d 407]: "There is no pretense of fraud on the part of the insured." Again, in the opinion written on motion for rehearing at page 408 of 13 S.W.2d, the court said: "The default in the payment of the check, after acceptance by the company, did not operate to forfeit the reinstated policy; *there being no fraud.*" (Italics ours.) In the case of State Mutual Life Ins. Co. v. Rosenberry, supra, the court held that when a reinstatement of a policy was secured by fraudulent representations, even orally made, such representations may furnish ground for voiding the policy.

█ That fraud vitiates a contract is a rule of universal recognition. Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47. The foregoing finding of the jury, in our opinion, convicted the appellant of fraud of such character as precluded him from recovery on his asserted cause of action, thereby rendering the remaining findings immaterial. We may assume, without deciding, that appellee's agent was duly authorized to waive the payment of the premiums in cash and to unconditionally accept in payment thereof appellant's check dated July 28, 1941, with the understanding that the same would not be presented for payment until September 1, 1941; and we may further assume, as found by the jury, that he did accept said check in payment of the premiums in question, and did agree not to present the same for payment until on or about September 1, 1941. Yet appellant would not be entitled to recover on his asserted cause of action unless he acted in good faith in executing and delivering his check to appellee. Appellant cannot take advantage of the acts and agreements of appellee, induced solely by reason of his own fraudulent conduct, to constitute either waiver or estoppel. Waiver is operative only where the person charged has actual or constructive knowledge of all the material facts concerning the right or privilege involved. 43 T.J. p. 895. It is not contended that any of the agents of the insurance company knew, when the check was accepted, of appellee's secret intention that the check in question would never be paid. There was no meeting of the minds of the parties. Therefore, the agreement to accept the check as payment of premiums would fail for want of mutuality. In ref-

erence to the doctrine of equitable estoppel, an able judge has observed: "Its mission is to protect the innocent and blameless. For this purpose it compares the conduct of men; and, whenever loss must result to one of two persons because of the culpable conduct of one of them, it interposes, and compels the wrongdoer to sustain the loss, * * *." Westbrook v. Guderian, 3 Tex.Civ.App. 406, 22 S.W. 59, 60.

The contract of insurance expressly provided that if any premiums should not be paid when due, the policy would be void. As shown above, default was made in the payment of premiums more than thirty days prior to the insured's death, and for this reason all rights thereunder were forfeited. This forfeiture having occurred prior to the insured's death, it is immaterial that thereafter the insurer received and retained in its possession, uncashed, the postal money order for $8. After the insured dies, the waiver of a forfeiture, which occurred, before his death, cannot restore the life insurance contract. Washington Nat. Life Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 113 A.L.R. 854; Gibraltar Colorado Life Co. v. Taylor, 132 Tex. 328, 123 S.W.2d 318; Moore v. Supreme Assembly of Royal Society of Good Fellows, 42 Tex.Civ.App. 366, 93 S.W. 1077, error refused.

Appellant complains that the trial court refused to submit to the jury his special requested issue inquiring whether the defendant insurance company had money in its possession belonging to the insured which would have been sufficient to have paid the delinquent and unpaid premiums. We overrule this contention. It is true that the insurance company admitted its liability to the beneficiary, under the terms of the insurance contract, in the sum of $40, being the amount of paid-up insurance due under the terms of the policy. The policy provided that in case of default in the payment of premiums after they had been paid for three consecutive years or more, the company would continue the policy as a non-participating free policy, upon which no further premiums would be required, for a reduced amount as set forth in the table therein shown. It is not questioned that the correct amount due under the foregoing provision was the sum of $40. The policy had no cash surrender value. There is no policy provision requiring application of any reserve to pay delinquent premiums to put the policy in force, or for extended insurance in the same amount. It has been held that in the absence of such a policy provision, an insurance company is not required to apply a reserve to such extended insurance. Great Southern Life Ins. Co. v. Wester, 127 Tex. 274, 92 S.W.2d 238; State Reserve Life Ins. Co. v. Carter, Tex.Civ.App., 109 S.W.2d 781.

Being of the opinion that no reversible error is disclosed by any of appellant's assignments of error, each of said assignments is overruled, and the judgment of the trial court is accordingly in all things affirmed.