**AMERICAN NAT. INS. CO. v. O'DELL.**
No. 12196.

Court of Civil Appeals of Texas. Galveston.
June 8, 1950.

Rehearing Denied July 27, 1950.

Blades, Kennerly, Fisher & Whitworth, of Houston, Dibrell, Dibrell & Greer, of Galveston, for appellant.

Eugene N. Catlett, of Houston, Burris, Benton & Baker, of Houston, of counsel, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the 55th District Court of Harris County, in favor of the appellee against the appellant, for a total of $1,640, as the accrued value of a $1,000 life insurance policy issued by appellant to the appellee's deceased husband, on March 18, 1943, together with additions thereto of $120 for interest, 12 per cent penalty, and $400 for attorney's fees; such decree having been entered by the court at the close of all the evidence, after having granted the appellee's motion for that relief, after withdrawing the case from a jury then in attendance.

Appellant's 10 points of error in this court may be thus, in substance, somewhat condensed:

The trial court erred in holding:

(1) That the nonforfeiture provisions of the policy were in contravention of

Article 4732, Vernon's Ann.Civ.St. while actually they are completely in accord therewith, and the policy is, therefore, a valid binding contract;

(2) In refusing to grant defendant's motions for instructed verdict, made after plaintiff had rested and after both plaintiff and defendant had rested, because the evidence showed conclusively, as a matter of law, that the nonforfeiture provisions of the policy are in accord with Article 4732, and valid;

(3) In reading into said policy provisions for extended-term insurance, since the policy did not provide for extended-term insurance, but did provide a stipulated form of insurance (paid-up life insurance), in the event of lapse, after the policy had been in force three full years;

(4) In holding that the defendant had in its hands funds belonging to plaintiff, which it was bound to use, contrary to the provisions of said policy, for the purchase of extended-term insurance;

(5) In refusing to grant defendant's motions for instructed verdict, because the uncontradicted evidence showed conclusively that the premium due March 17, 1947, and the premium due June 17, 1947, were not paid, and, therefore, the policy lapsed according to its terms;

(6) In granting plaintiff's motion for instructed verdict, at the close of all the evidence, and after both sides had rested, because all the evidence presented by both plaintiff and defendant showed conclusively, as a matter of law, that said policy had lapsed, and the policy had become a policy of paid-up insurance;

(7) In refusing to grant defendant's motions for instructed verdict, because plaintiff had failed to introduce any evidence of waiver by the defendant of the terms of said policy relative to the payment of premiums, and plaintiff's evidence showed conclusively, as a matter of law that there had been no waiver of said terms;

(8) In refusing to hold that the policy of insurance had been defaulted by the insured, and that the plaintiff was entitled only to the sum of $92.00 for the paid-up insurance provided by the policy in the Table of Guaranteed Values, and tendered to plaintiff by defendant.

The appellee, in turn, presents in reply these two counter-points:

(1) The undisputed facts showing that the appellant, by its acts and course of conduct, recognized the continued validity of the O'Dell policy until June 17, 1947, and so relieved appellee and her husband, the insured, of the obligation to tender the premium-payment falling due on June 17, 1947, said policy was in full force and effect at the time of the death of the husband, on August 3, 1947, the District Court properly granted appellee's motion to peremptorily instruct the jury in her favor;

(2) The undisputed evidence showing that the policy issued to insured failed to comply with Section 7 of Article 4732, V.A.C.S., or, if it intended to do so, under the peculiar circumstances in this case, it wholly failed to accomplish that purpose, then such statute, by operation of law, became a part of said policy, and the appellant here became bound to apply the cash reserve at the election of appellee, which had accumulated under said policy, to the purchase of extended insurance. The undisputed evidence showing that appellee had at all times refused to accept paid-up insurance, in lieu of extended insurance, and the undisputed evidence showing sufficient cash and loan value to keep said policy in full force and effect, as extended insurance, beyond the date of the death of the insured, the judgment of the lower court was correct.

Without, at this stage, further elaborating, it is held that the controlling questions of law arising from such action of the court below may be reduced to these two:

(1) Whether or not the facts before the court conclusively showed that the insurance company so recognized the validity of the policy sued upon until June 17, 1947, and in consequence thereof relieved the appellee and her so-insured husband of their obligation to tender the premium payment maturing on that date, leaving the policy in full force and effect at the time of the husband's death on August 3, 1947;

(2) Whether such evidence likewise showed that the policy so issued to the appellee's deceased husband failed to comply with Section 7 of Article 4732, V.A.C.S., to such extent that the trial court was justified in holding that the provisions of the policy did not automatically secure to the insured a form of nonpremium-paying insurance—in case of default in the payment of premiums—so as to require the court to disregard such provisions and to read the terms of that statute into the policy instead, as constituting the terms of the contract the parties actually and legally made when the policy was issued.

The field the litigation thus impinged upon is an extensive one, with the line of continuity of decision down through the many decisions dealing with various policies of insurance of like or similar character sometimes difficult to trace.

But the parties here, as disclosed by their oral arguments upon the submission of this appeal and their briefs in supplement thereto, seem to agree that our Supreme Court has settled what the law is with reference to the kind of policy here involved, and has most directly stated it in the comparatively recent case of American Nat'l Ins. Co. v. Foster, as reported in 133 Tex. 588, 130 S.W.2d 287, 290.

That is, specifically, these parties each plant themselves upon the holding in the Foster case, the appellant insisting that this policy involved the nonforfeiture provisions which are completely in accord with that holding; whereas the appellee, as her quoted counterpoint No. 2 recites, urges that the nonforfeiture provision in this policy did not comply with the cited statute, because it required the insured to perform a condition by way of a written application and the filing of a written request with the company, at its Home Office, accompanied by the policy, before the expiration of the grace period, and while the policy was still in force and effect.

Wherefore, the appellant, upon the one hand, insists that, since its policy provided, in the event of default in the payment of premiums, that it should become a policy of paid-up insurance in the amount of $92,

it was only due the appellee that sum, which it tendered into the court.

The appellee, on the other hand, alleged that, since the undisputed proof showed there was due her deceased husband the sum of $44 as the cash-surrender value of the policy at the time of his death, which she was expressly authorized to apply to "extended-term insurance", which she did, and which the appellant wholly failed to issue to her, the trial court's judgment in her favor was correct.

This Court is constrained to hold with the trial court, hence to sustain its judgment.

 The policy in suit having been so issued in 1943 was accordingly some four years in advance of the adoption by the Legislature of the present form of Section 7 of cited Article 4732, as amended by the Acts of the 50th Legislature, in 1947, and it is thought that this declaration of the Supreme Court, in the Foster case, rules this case also: " * * * The provision does not, as the statute contemplates shall be done, automatically 'secure' to the insured or the beneficiary a form of non-premium paying insurance in case of default in the payment of premiums. In this situation the policy provision in question must be disregarded in arriving at a conclusion, and the terms of the statute must be read into the policy as constituting terms of the contract which the parties made at the time the policy issued. Considered as a term of the contract, the statutory provision to the effect that 'a stipulated form of insurance' shall be secured to the policy owner implies the unqualified right in the insured (or the beneficiary) to choose which particular form of non-premium paying insurance shall be given effect. Since, therefore, no choice in this respect was made by the insured in the present instance, and since 'extended term insurance' still was available at the time insured died, it follows that Mrs. Foster has the contract right to choose, as she has done, this type of insurance to be given effect."

The appellant also relies upon American Nat. Ins. Co. v. Ingle, 137 Tex. 189, 152 S.W.2d 1098, 136 A.L.R. 1325; Rogers v.

Nat. Life & Accident Ins. Co., Tex.Civ. App., 185 S.W.2d 459, no writ, and Manhattan Life Ins. Co. of New York v. Wilson Motor Co., writ refused, Tex.Civ.App., 75 S.W.2d 721; while the appellee cites Timmerman v. Bankers' Reserve Life Co., 122 Tex. 603, 63 S.W.2d 687, 689.

 The trial court—presumptively at least—found all the facts recited in appellee's counterpoint No. 1, and this court cannot say the evidence was insufficient to support that action.

This resume of what are deemed the controlling ones of such facts is quoted with approval from the appellee's brief:

"All premium payments were promptly made by Appellee for four full successive years, each quarter, from March 17, 1943, until and including September 17, 1946.

"Quarterly payment due December 17, 1946, was paid by check dated January 27, 1947, signed by Mrs. O'Dell, and endorsed on February 1, 1947, and paid by perforation on February 4, 1947 * * *.

"The quarterly premium payment due March 17, 1947, was not paid until after the expiration of the grace period, in the same manner as the previous December payment. Mrs. O'Dell wrote a check to pay the March 17, 1947, payment on April 28, 1947. Such check was mailed on April 28, 1947, to the defendant company. This check was not heard of again by the insured and Mrs. O'Dell until June 17, 1947, being the same day that the next payment of quarterly premium fell due. Mrs. O'Dell testified that she mailed a check on April 28th, and the next day got notice that the policy had lapsed; in other words, her letter with her check and the letter she received crossed in the mails. Mrs. O'Dell testified that she never got the check back until June 17, 1947."

In other words, the appellant so held such check for two months—that is, until it would not have reached the insured until after the June payment had become due.

In these circumstances, it is thought that the appellant became estopped to claim a forfeiture of the policy in suit for nonpayment of the premiums. Stone

v. Brady Mutual Life Ins. Ass'n, Tex.Civ. App., 2 S.W.2d 538; Dunken v. Aetna Life Ins. Co., Tex.Civ.App., 221 S.W. 691; Calhoun v. The Maccabees, Tex.Com.App., 241 S.W. 101; Texas State Mutual Fire Ins. Co. v. Leverette, Tex.Civ.App., 289 S.W. 1032; Alamo Health & Accident Ins. Co. v. Cardwell, Tex.Civ.App., 67 S.W.2d 337; New York Underwriters Ins. Co. v. Brittain, Tex.Civ.App., 62 S.W.2d 168; Home Benefit Ass'n, of Brozos County v. Catchings, Tex.Civ.App., 38 S.W.2d 386, writ of error refused; and Excelsior Mutual Life Insurance Company v. Hunter, Tex.Civ. App., 120 S.W.2d 905.

Further discussion is deemed unnecessary, since these conclusions require an affirmance of the trial court's judgment. It will be so ordered.

Affirmed.